CAPITAL MANAGEMENT COMPANY
Defendant Below, Appellant,

v.

Charles A. BROWN, Plaintiff
Below, Appellee,

and

Cathedral Community Services, Inc.,
Defendant Below, Appellee.

No. 129,2002.

Supreme Court of Delaware.

Submitted: Sept. 10, 2002.
Decided: Dec. 18, 2002.
Reargument Denied Jan. 22, 2003.

Stephen P. Casarino (argued) and Thomas P. Leff (argued) of Casarino, Christman & Shalk, Wilmington, for appellant.

Stephen B. Potter and Jennifer–Kate Aaronson (argued) of Potter, Carmine, Leonard & Aaronson, Wilmington, for appellee Brown.

Tracy Burleigh of Marshall Dennehey Warner Coleman & Goggin, Wilmington, for appellee Cathedral.

Before HOLLAND, BERGER and STEELE, Justices.

STEELE, Justice:

In September 2001, a civil jury in the Superior Court returned a verdict in the favor of the plaintiff, Charles A. Brown and against both co-defendants Capital Management Company and Cathedral Community Services, Inc. This is Capital's appeal of several of the trial judge's rulings.

## I.

On June 1, 1994, Cathedral entered into a written contract with Capital, whereby Capital agreed to manage and maintain certain properties owned by Cathedral. The properties included three apartment

units at 2001 N Market Street. The original one year contract expired in 1995.

Although the written contract expired in 1995, Capital continued to manage Cathedral's property located at 2001 N. Market Street. Gary Hayman, President of Capital, testified that Capital continued to manage Cathedral's property because Cathedral "didn't have the capacity they needed to do some of those things" required to manage the property. Capital wanted to "help the Church," so Capital continued to manage the property without a written contract.

According to Hayman, after the contract expired, Capital's management duties included pre-rental inspections, advertising for tenants, maintenance work on the apartments (painting, plumbing, and electric), collection of rents, and filing legal actions. Capital paid itself a management fee and reimbursed itself for maintenance and repair from rental fees.

On August 23, 1999, the plaintiff, Charles Brown was standing underneath an exterior fire escape attached to the side of 2001 N. Market Street. Brown touched the bottom step of the fire escape ladder, and the ladder section fell striking Brown on the head. He suffered a compound, comminuted, depressed skull fracture. The ladder section fell because a supporting metal cable, which was severely corroded, broke, releasing the ladder and a counterweight.

On October 21, 1999, Brown filed a damage action against Cathedral and Capital. Capital answered the complaint, and asserted a cross-claim against Cathedral for contribution and indemnification. Brown settled his claim against Cathedral and signed a joint tortfeasor release. Although Capital continued to maintain its cross-claim against Cathedral, Cathedral chose not to contest the cross-claim, and

ceased participating in the litigation. The case went to trial on September 10, 2001.

At trial, Capital offered into evidence an admission made by Cathedral in the pleadings that it was "in control of the premises located at 2001 N. Market Street." The trial judge permitted the admission, but stated in an earlier colloquy that he was going to instruct the jury, and later did instruct the jury, that Cathedral's "admission of 'control' of the property does not equate to or is it the same as an admission as to responsibility for maintenance of the property."

The trial judge also refused to instruct the jury that Cathedral was not represented at trial because it had settled its claim with the plaintiff. Shortly into the jury's deliberations, the jury submitted a question asking why Cathedral was not present at trial. The trial judge explained that Cathedral chose not to participate, but he did not disclose that Cathedral had settled with Brown.

On September 14, 2001, the jury returned a verdict in favor of Brown. The jury apportioned liability 60% against Capital and 40% against Cathedral, and awarded Brown damages in the amount of $2,250,000. Capital moved unsuccessfully for a new trial. This appeal followed.

## II.

Capital first alleges that the trial judge improperly submitted the question of whether Capital owed contractual duties to Cathedral, a purely legal issue, to the jury. Second, Capital alleges that the trial judge erred by not ruling as a matter of law that it had no duty to maintain the exteriors of Cathedral's properties, including the fire escape causing Brown's injuries. Third, Capital alleges that the trial judge impermissibly commented on the evidence when he told the jury that admitting "control" of the premises did not mean "responsibility

for maintenance of the property." Finally, Capital alleges that the trial judge erred when he refused to tell the jury that Cathedral did not appear at trial because it had settled with Brown. Because we believe the trial judge acted correctly in each cited instance, we affirm.

### III.

■ The first issue on appeal is whether the trial judge improperly submitted to the jury the question of Capital's duties under the parties' agreement. Capital argues that the trial judge abdicated his required role to interpret the legal meaning of the contract and improperly imposed this obligation on the jury.

■ Capital argues that its contract with Cathedral was ambiguous and that the following compelled the trial judge to determine the legal duties each party owed the other:

> If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create ambiguity. But when there is uncertainty in the meaning and application of contract language, the reviewing court must consider evidence offered in order to arrive at a proper interpretation of contractual terms.[1]

While Capital's counsel correctly states this general rule of contract interpretation, the rule does not apply here because an ambiguity in written contract terms was not in issue. The issue to be resolved here was a factual one—what *were the terms* of

the agreement between Capital and Cathedral? Or, put another way—did the parties contract for the maintenance of the exterior of 2001 N. Market Street?

The terms of Capital and Cathedral's agreement are composed of more than just the writing that expired in 1995. If the contract had not expired, and was still in effect the day Brown suffered his injury, the trial judge should have determined whether the terms in that contract were ambiguous, and if they were, heard extrinsic evidence to determine what the parties intended those terms to mean.[2] However, because there was no written contract in effect between the parties, the issue submitted to the jury was this: What is the agreement between the parties based on their relationship and their conduct regarding maintenance of the property? The jury was asked to determine what duties Capital had based on its relationship with Cathedral. They were not asked to determine the meaning of the expired contract because the actual terms of the agreement and relationship between the parties were in dispute and not simply the meaning of those terms. The very terms of the contract, what they were, not what they meant, were at issue and were, therefore, properly submitted to the jury as a question of fact.

### IV.

The next issue is whether Capital had assumed a duty to maintain the exterior of Cathedral's properties, including the fire escape. Or, in the alternative, whether Capital, regardless of its contractual relationship with Cathedral, had a duty under

1. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1233 (Del.1997). Capital cites to *Klair v. Reese*, 531 A.2d 219 (Del. 1987) for this basic principle, but we must point out, as we did in Eagle, that "certain language in the Court's opinion [in *Klair*] is overbroad on the issue of when extrinsic evidence should be considered. To the extent that such language may be read to be broader than, or at variance with, the principles set forth in [*Eagle*], it is disapproved." *Eagle*, 702 A.2d at 1233, FN 7.

2. *Eagle*, 702 A.2d at 1232.

the Wilmington City Code to maintain the fire escape. We find that Capital had agreed to assume the duty to maintain the exterior of 2001 N. Market Street and that the Wilmington City Code required it to maintain the fire escape.

## A. Capital's contractual duty.

 Capital argues that the clear language of the expired contract stated that the "project" managed by Capital consisted of those apartment units listed in the agreement, but not the fire escapes attached to the units. Therefore, Capital argues that it had no duty to inspect or repair the exterior of the building, including the fire escape. This position ignores the fact that the agreement between Capital and Cathedral included more than just the expired written contract. The contract between Cathedral and Capital was implied-in-fact after the express written contract had expired. "[A]n implied contract is one inferred from the conduct of the parties, though not expressed in words." [3] "The parties' intent and mutual assent to an implied-in-fact contract is proved through conduct rather than words." [4] In analyzing the conduct of the parties, it becomes clear that Capital had a duty to maintain and repair the exterior, including the fire escape.

After the written contract expired, Capital continued to manage the property, including painting, plumbing and electric. Hayman testified that there was no written contract in effect between Capital and Cathedral, but that Capital managed the property because, as a not-for-profit organization, Cathedral did not have the capacity to manage it. Capital recognized Cathedral's inability to maintain the building. Cathedral's incapacity was the reason Capital continued to maintain the buildings after the contract expired. The jury could have rationally concluded that if Capital realized that Cathedral did not have the ability to maintain the building itself, Capital must have similarly realized that Cathedral could not maintain specific exterior safety features of the building according to Code. A rational jury could easily conclude that Capital knew Cathedral intended and expected that Capital would maintain the exterior features of the property according to Code.

Second, Capital argues that Cathedral's incapacity and Capital's agreement to maintain the project, did not make it responsible for exterior maintenance. Capital admitted at oral argument that if a window, which opened to the exterior, were broken, Capital would be responsible for repairing the window. Capital stated that the tenants from the interior units use the window, which would make it Capital's responsibility to repair. By that same reasoning, the fire escape would be Capital's responsibility because the fire escape, like the window, is located on the exterior and would logically be used by the tenants in the interior units in the event of fire. Who else, other than the tenants and their invitees, would use the fire escape? There is a clear factual basis for a jury to conclude that Capital had agreed to assume a duty to maintain the fire escape.

## B. Capital's duty under the Wilmington City and Building Codes.

 ▪ Capital had a duty under section 42–215 of the Wilmington City Code to

**3.** 17A Am.Jur.2d. § 12 (1991). See also, *Parfi Holding AB v. Mirror Image Internet, Inc.,* 794 A.2d 1211, 1238 (Del.Ch.2001) rev'd on other grounds, Del.Supr. No. 27,2002, —— A.2d ——, 2002 WL 31477125 (Nov. 4, 2002); *Creditors' Committee of Essex Builders, Inc. v.*

*Farmers Bank,* 251 A.2d 546, 548 (Del.1969); *Chase Manhattan Bank v. Iridium Africa Corp.,* 239 F.Supp.2d 402 (D.Del.2002).

**4.** *Chase Manhattan Bank,* 239 F.Supp.2d at 408.

maintain the exterior of the property including the fire escape in question. It is long-settled Delaware law that the violation of a statute, or regulation having the force of statute, enacted for the safety of others is negligence in law or negligence *per se.*[5] Section 42–215 states:

> Any encroachment on, over, across, in, under or upon the sidewalk of any street, highway, lane or alley of the city which shall become dangerous to ... the traveling public by reason of any cause whatsoever, shall thereby be declared a violation of this article. Any ... agent in charge of the premises to which such encroachment is attached shall be deemed guilty of maintaining a nuisance in violation of the provisions of this Article.

Section 119.01 of the Wilmington Housing Code regarding building maintenance, which is applicable to the "agent in charge," provides:

> All exterior wood and metal surfaces shall be protected by the elements and against decay by ... approved protective coatings applied in a workmanlike manner. Any evidence of decay such as cracking, scaling, peeling, or loose paint or decay of any protective coating shall be a violation of this section.

The fire escape that injured Brown was an encroachment that hung over N. Market Street. The wire cable attaching the fire escape platform to the ladder rusted and broke, causing Brown's injury. We have determined that it is reasonable for the jury to conclude that Capital had agreed to assume a duty to maintain a fire escape located on the exterior of the building for the tenants' emergency use. Capital continued as Cathedral's agent to maintain the building after a written contract expired. As Cathedral's agent, Capital was responsible for keeping the building, including the fire escape, in compliance with the Wilmington City Code. Because Capital had a duty under the Wilmington Housing and City Codes to maintain the fire escape, the jury properly found that Capital's failure to maintain the fire escape constituted negligence *per se.*

## V.

■ The next issue is whether the trial judge improperly commented on the evidence when he instructed the jury that Cathedral's "admission of 'control' of the property does not equate to or is it the same as an admission as to responsibility for maintenance of the property." Capital argues that this statement to the jury was an impermissible comment on the evidence because it essentially told the jury that the word "control" did not really mean control. Capital argues that the trial judge's statement constituted an impermissible comment on the facts and, therefore, violated Article IV, section 19 of the Delaware Constitution. We find Capital's argument unpersuasive.

Article IV, Section Nineteen of the Delaware Constitution states that "judges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law." Section Nineteen was adopted as a new provision in the 1897 Constitution to ensure that judges confined themselves to making determinations of law and leaving juries to determine the facts.[6]

---

**5.** *Toll Brothers Inc. v. Considine,* 706 A.2d 493 (Del.1998); *Sammons v. Ridgeway,* 293 A.2d 547 (Del.1972).

**6.** *Herring v. State,* 805 A.2d 872, 876 (Del. 2002) (citing 3 DEBATES AND PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF THE STATE OF DELAWARE 1729–30 (1958)).

 Trial judges may properly combine a statement regarding a fact in issue with a declaration of the law.[7] Trial judges may not, however, comment on the facts in their charge to the jury.[8] An *improper comment or charge on* "matters of fact" is an expression by the court, directly or indirectly, that may convey to the jury "the court's estimation of the truth, falsity or weight of testimony in relation to a matter at issue."[9] However, a trial judge may explain the "legal significance which the law attaches to a particular factual finding."[10]

The trial judge's instruction neither directly nor indirectly commented on the truth or falsity of the evidence nor on the weight to be given to the evidence.[11] Cathedral's admission in its pleadings that it was in "control" of the property was with regard to who was in control between Cathedral and Brown. Capital sought to construe this evidence as an admission that Cathedral rather than Capital, under their relationship had assumed responsibility for maintaining the building and its fire escape. The admission of "control" differed from the factual issue of, who, between Capital and Cathedral, had the obligation to maintain the property. The trial judge's statement was no more than an explanation of a potentially confusing pleading filed by a party not present at trial. Accordingly, the trial judge's statement did not constitute an impermissible comment on the evidence, and did not violate Article IV, section 19 of the Delaware Constitution.

## VI.

 Finally, Capital argues that the trial judge abused his discretion by failing to instruct the jury that Cathedral was neither present nor represented at trial because it had earlier entered into a settlement agreement with Brown. Capital argues that the jury was confused about why Cathedral, a significant player in the litigation scenario, was neither present nor represented at trial. Capital alleges that the judge abused his discretion when he refused to avoid any confusion about the alignment of the parties by telling them that Cathedral had settled its claim with Brown.

Brown argues that, pursuant to D.R.E. 408, evidence of his settlement with Cathedral is inadmissible.

D.R.E. 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed to either validity or amount is not admissible to prove liability for the claim of its amount.[12]

 Two principles underlie Rule 408: 1) the evidence of compromise is irrelevant since the offer may be motivated by a desire to terminate the litigation rather than from any concession of weakness of position; and 2) public policy favors compromise in settlement of disputes. However, D.R.E. 408 "does not require exclusion

---

7. *Herring,* 805 A.2d at 876.

8. *Herring,* 805 A.2d at 876; *Storey v. Camper,* 401 A.2d 458, 462–65 (Del.1979).

9. *State v. Halko,* 56 Del. 480, 193 A.2d 817 (Del.Super.Ct.1963) (citing *State v. Carey,* 36 Del. 521, 178 A. 877, 882 (Oyer & Term 1935)), *aff'd* 58 Del. 47, 204 A.2d 628 (1964).

10. *Hall v. State,* 473 A.2d 352, 356 (Del.1984).

11. *Halko,* 193 A.2d at 829.

12. D.R.E. 408.

of settlement related evidence when the evidence is offered for another purpose." [13]

It would not have been improper for the trial judge to tell the jury that Cathedral was no longer part of the case and instructing them that they need not speculate about why. The purpose of the instruction would have been to inform the jury of the alignment of the parties. Simply telling the jury that a party is no longer part of the case for the purpose of avoiding confusion about the alignment of the parties does not violate D.R.E. 408 or the principles underlying it. Therefore, the judge would not have been in error had he instructed the jury that Cathedral was not present at trial because it had settled with Brown. Nevertheless, the instruction as given did not prejudice Capital because the jury assigned 40% liability to Cathedral in any event. It seems manifestly unlikely that the jury was confused about its role in assessing the relative fault of the parties and assigning liability accordingly because it assigned Cathedral 40% of the liability. The judge's instruction to the jury after the jury's question about why Cathedral was not represented at trial adequately avoided any jury confusion or speculation about the alignment of the parties and avoided any suggestion of how relative degrees of fault should be determined by them.

We note finally that questions about whether third party settlements will be admissible at trial or how the trial judge should explain alignment of the parties could best be resolved during pre-trial proceedings.

The judgment of the Superior Court is affirmed.