Arlene ALEXANDER and Leon Alexander, as next friend of Darryl Alexander, Plaintiff Below, Appellant,

v.

Frank CAHILL and Lehane's Bus Service, Defendants Below, Appellees.

No. 630,2001.

Supreme Court of Delaware.

Submitted: Feb. 4, 2003.
Decided: April 2, 2003.

Stephen B. Potter (argued) and Jennifer–Kate Aaronson of Potter Carmine & Leonard, Wilmington, for appellant.

Richard D. Abrams (argued) of Heckler & Frabizzio, Wilmington, for appellee LeHane's Bus Service.

Benjamin C. Wetzel, III (argued) and Natalie M. Ippolito of Bailey & Wetzel, P.A., Wilmington, for appellee Frank Cahill.

Before HOLLAND, BERGER and STEELE, Justices.

STEELE, Justice:

In this appeal, Appellant Darryl Alexander seeks reversal of the judgment of the Superior Court in a personal injury case and a new trial against Appellees Frank Cahill and LeHane's Bus Service. We conclude that the trial judge erred by allowing a police officer to give his lay opinion on the cause of the accident, and by admitting evidence of third-party settlements contrary to Delaware Rule of Evidence 408. Although not warranting reversal on its own, we deem it necessary to address whether a party must assert the "Choice of Evils" defense in the pleadings or in a pretrial stipulation, and voice our disapproval of the trial judge's procedure for handling objections.

## I.

On February 24, 1999, a multi-car accident occurred on Route 13 in New Castle, Delaware. As a result, Alexander, a passenger in a school bus, sustained an injury. Four defendants were involved in the accident: (1) Frank Cahill; (2) LeHane's Bus Service Inc.; (3) Knotts, Inc. and its bus driver Cormae Bash (collectively "Knotts"); and (4) Edward Bermudez and the owner of his vehicle Monaghan Rubber Company (collectively "Bermudez").

Cahill was driving northbound on Route 13, a four lane divided highway, in the right-hand lane. He noticed that a school bus (the LeHane bus) traveling on the southbound side of Route 13 had activated its yellow lights. Cahill stopped his vehicle in the right-hand lane on the northbound side of Route 13 and watched the school bus discharge the students. Two of the students crossed in front of the bus, and crossed the northbound side of Route 13. As the students reached the median separating the northbound and southbound lanes, the school bus turned off its lights and drove away.

Sandra Hoke, LeHane's school bus driver, testified that she stopped at a legitimate bus stop, but not the correct stop for the two students that crossed the highway. She testified that she knew the two students had to cross the highway to get home, but that the students insisted that she stop and let them off on the wrong side of the highway so that they need not wait for the bus to turn around. Hoke testified that the students used force and intimidation to ensure her compliance. At oral argument, Alexander's counsel remarked that Hoke's testimony described the "bus from hell."

As the two students stepped off the median into the northbound lanes, an unidentified school bus passed Cahill's vehicle on the right-hand shoulder. Defendant Burmudez's white truck followed the unidentified school bus. However, Bermudez could not stop behind Cahill because he followed the school bus too closely. As a result, Bermudez pulled over to the right-hand shoulder, following the unidentified school bus, and stopped nearly evenly with Cahill's vehicle.

A third school bus, the Knotts' bus operated by Cormae Bash, was traveling behind Burmudez. Bash's bus was traveling approximately 50 to 55 miles per hour. She failed to the see traffic slowing down or the brake lights because her passengers were allegedly acting up. Bash tried to avoid the accident by driving between Cahill's vehicle and Bermudez's truck. Unfortunately, Bash's bus collided with both vehicles.

Alexander was a passenger in the Knotts school bus driven by Bash. As a direct result of the accident, he sustained serious and permanent injuries. Alexander brought negligence actions against Knotts, Bermudez, Cahill, and LeHane. On November 9, 2001, the Superior Court approved settlements with defendants Bermudez and Knotts, and Alexander executed a Joint Tortfeasor Release, releasing his claims against Bermudez and Knotts. The trial against remaining defendants LeHane and Cahill began on November 26, 2001.

During trial, Cahill's counsel cross-examined Trooper Einbrod, who appeared at the scene after the accident. Counsel asked, "it's fair to say, is it not, ... that you issued citations to Mr. Bermudez and Ms. Bash, and attributed the cause of the accident to Ms. Bash?" Trooper Einbrod responded, "yes." Alexander's attorney objected, but the trial judge denied the objection.[1]

Cahill's attorney also cross-examined Alexander's mother regarding Alexander's settlement with defendants Knotts and Bermudez. Cahill's attorney asked, "you and your husband have reached a settlement on behalf of your son against the Defendant[s] Knotts and Bermudez ... and have or will receive moneys for releasing liabilities against them; is that right?" Alexander's mother responded, "yes, sir."[2]

The trial judge's closing instructions informed the jury that two of the defendants had settled their claims with the plaintiff, but that they were not to consider the settlement in their verdict. He instructed them to determine who among all the defendants were negligent, which were the proximate cause, and then to apportion the degrees of fault based on percentages. The jury returned a verdict of $125,000 in favor of Alexander, but apportioned 98% of the liability on Knotts, 2% on Cahill, and none on LeHane or Burmudez. Alexander appealed.

1. Appellant's Op. Br. at 13.

2. *Id.* at 28.

## II.

Alexander raised a number of issues on appeal, four of which we discuss, and the resolution of two of which requires a new trial.

The first issue is whether the trial judge erred by allowing a police officer to give a lay opinion of the cause of the accident.

The second issue is a two part inquiry: First, did the trial judge improperly instruct the jury that two of the parties had settled their claims with Alexander; and second, if the judge correctly instructed the jury about the third-party settlements, did he nonetheless err by allowing the parties to elicit testimony from witnesses about the nature of the settlement.

The third issue requires that we address whether a civil litigant may raise Delaware's "Choice of Evils" defense at trial without having given the defense notice that he would do so either in a pleading or in the pretrial stipulation.

The fourth issue we address is whether a trial judge should resolve evidentiary objections by forcing attorneys to confer and settle them on their own in the open courtroom in the presence of the jury.

## III.

 The first issue on appeal is whether the trial judge abused his discretion by allowing a police officer to give a lay opinion of the cause of the accident. Delaware Rule of Evidence 701 states:

If a witness is not testifying as an expert, his testimony about what he perceived may be in the form of inference and opinion, when:

(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions, and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and

(2) The opinions and inferences do not require a special knowledge, skill, experience or training.[3]

 "A lay witness may only express an opinion when the perception of the witness cannot be communicated accurately and fully without expressing it in terms of an opinion ...."[4] For example, the phrase "X was drunk" is an opinion, but probably admissible because it would be difficult to articulate using facts like "X had impaired speech, poor physical coordination, and telltale breath."[5]

On cross-examination by Cahill's attorney, Trooper Einbrod testified:

Q. And it's fair to say, is it not, that after you concluded your investigation, you spoke to other people involved, spoke to witnesses, including a New Castle County police officer who was a witness, that you issued citations to Mr. Bermudez and Ms. Bash, and attributed the cause of the accident to Ms. Bash?

A. Yes.[6]

 Bash pled guilty to the citation, therefore, testimony that he did so was correctly admitted as an admission against interest. However, the Trooper's testimony that he attributed the cause of the accident to Bash was a conclusion based on his opinion as a layman without the re-

---

3. D.R.E. Rule 701.

4. *Seward v. State*, 723 A.2d 365, 372 (Del. 1999).

5. Graham C. Lilly, *An Introduction to the Law of Evidence*, § 4.9 (3d ed.1996).

6. Appellant's Op. Brief at 13.

quired foundation and, therefore, inadmissible.

In *Laws v. Webb*,[7] we concluded that a trial judge did not abuse his discretion when an officer "did not testify that Laws' improper crossing was the legal or proximate 'cause' of the accident, but rather, he testified that, at the time of the accident, he merely filled in the 'primary cause' box on his report with the phrase 'improper crossing.'" In *Laws*, the officer also repeatedly emphasized to the jury that he was not qualified to determine causation, and that he was not an accident reconstruction expert.

Here, Trooper Einbrod could have testified about the position of the cars on the road, locations of skid marks and other facts he witnessed based on his own experience. He arguably could have testified that he checked the "primary cause" box on the citation he gave to Bash, appropriately qualified, although the relevance of that act may be questionable.[8] He cannot testify, however, that he inferred from what he observed and heard that Bash was the "cause of the accident;" that conclusion is for the jury.[9] Therefore, the trial judge abused his discretion by allowing Trooper Einbrod to testify, based on his investigation after the accident, that Bash caused the accident. While like the officer in *Laws*, Trooper Einbrod did not qualify as an expert and his proffered opinion, unlike in *Laws*, where the officer made it clear that the gratuitous reference to the marked form answer was simply administrative routine—went to the heart of the case. We conclude that because the trooper could readily testify to facts that he perceived communicable without inferences or opinions, it therefore constituted error to allow him to express a lay opinion contrary to D.R.E. 701.

## IV.

■ The second ruling that compels reversal is the trial judge's decision to admit testimony of Alexander's settlement with third-party tortfeasors Knotts and Bermudez. The ruling involves the application of D.R.E. 408 to settlements with third parties. There are two situations that frame this issue: (a) The judge discloses the third party settlement to the jury; and, (b) a party's attempt to elicit testimony regarding the third party settlement.

Delaware Rule of Evidence 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay or proving an effort to obstruct a criminal investigation or prose-

---

**7.** 658 A.2d 1000, 1010 (Del.1995),

**8.** *Id.*

**9.** *See Seward*, 723 A.2d at 373 n. 23 ("If the jury can be put into a position of equal vantage with the witness for drawing the opinion, then the witness may not give an opinion").

cution.[10]

◼ "Two principles underlie Rule 408: 1) the evidence of compromise is irrelevant since the offer may be motivated by a desire to terminate the litigation rather than from any concession of weakness of position; and 2) public policy favors compromise in settlement disputes."[11]

## A. Third-party settlement disclosed by judge

### 1. The Federal Approach

◼ Federal courts have held that Rule 408 applies to settlements between plaintiffs and third-party joint tortfeasors or former co-defendants.[12] Although Rule 408 is a general prohibition against admitting testimony of compromise, a judge may disclose the fact of settlement for the purpose of avoiding jury confusion.[13] Disclosing settlement "explains the absence of the settling defendants and thus tends to reduce jury confusion . . . ."[14]

In *Kennon*, the plaintiff injured his leg when his moped's windshield shattered after the moped struck a chug hole. He sued Slipstreamer, the manufacturer of the moped, and the windshield wholesaler. Slipstreamer cross-claimed against the windshield wholesaler, and brought third-party actions against the windshield retailer and the manufacturer of the Lucite from which the windshield was made. Before trial, the plaintiff settled with all defendants except Slipstreamer for a nominal amount, and the judge dismissed the parties from the suit. The judge, on his own initiative, explained to the jury that "[t]he plaintiff has made an election in this case, which is not unusual, that it wishes to proceed in the lawsuit against the one defendant only, and that there is a procedure available to do that, that eliminates their presence, even though the other two had been sued by this Defendant."[15] The judge further explained that he "didn't want [the jury] speculating on why [the other defendants] were not here and be concerned as to whether the court had made a ruling on the merits of the case . . . ."[16]

On appeal, the Fifth Circuit held that the district judge was within his discretion to disclose the fact of settlement, but not the amount of settlement.[17] Disclosing the fact of settlement was for the purpose of avoiding jury confusion, whereas disclosing the amount of settlement "serves no such purpose."[18]

The Eighth Circuit held similarly in a case involving the application of the Uniform Contribution Among Tortfeasors Act and what a judge could properly advise a jury about the fact of settlement.[19] In *Arhart v. Micro Switch Manufacturing Co.*, the plaintiff was injured in an industrial accident and brought products liability claims against three defendants including Micro Switch. The defendants sought indemnity and contribution under the Arkansas Uniform Contribution Among Tort-

---

10. D.R.E. 408.

11. *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 2002 WL 31854961 (Del.Supr.).

12. *See McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247–48 (1st Cir.1985).

13. *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1070 (C.A.5 1986).

14. *Id.*

15. *Kennon,* 794 F.2d at 1069.

16. *Id.*

17. *Id.* at 1070.

18. *Id.*

19. *Arhart v. Micro Switch Manufacturing Co.,* 798 F.2d 291 (8th Cir.1986).

feasors Act. In the midst of trial, the plaintiffs settled with all the defendants except Micro Switch for $465,000. The plaintiff discharged the claims against the settling defendants, but Micro Switch's cross-claim against the other defendants remained in play. The trial judge immediately instructed the jury of the fact of settlement and that "accordingly the jury was not to be concerned any longer with the settling defendants." [20] At the conclusion of the trial, the judge instructed the jury on negligence and comparative negligence. Under this bifurcated method, the jury was required to determine who, as between Micro Switch and the plaintiff, was negligent, and if it found Micro Switch negligent, apportion the liability between all the defendants. The plaintiffs requested that the trial judge instead instruct the jury to answer four specific interrogatories addressing which party (including the settling parties) was negligent, and then apportion liability to each. The trial judge instructed the jury using the former approach, and the jury returned a zero damage verdict.

On appeal, the Eighth Circuit held that both methods of submitting the case to the jury were acceptable, and that the district court judge did not err by advising the jury of the fact of settlement.[21] The court explained that because the plaintiffs settled "there remained no other alternative than to advise the jury of the obvious—that there had been a settlement." [22]

## 2. Analysis

■ Delaware courts, as the federal courts, allow judges to disclose the fact of settlement by third-party defendants for a purpose other than to prove liability or invalidity of the claim or its amount. Specifically, we have stated, "[I]t would not have been improper for the trial judge to tell the jury that [one of the defendants] was no longer part of the case and instructing them that they need not speculate why. The purpose of the instruction would have been to inform the jury of the alignment of the parties." [23]

In the case at hand, the trial judge used Civil Pattern Jury Instruction 22.19 to instruct the jury how to apportion liability among the joint tortfeasors. The instruction was similar to the bifurcated instruction the court used in *Arhart.*[24] Pursuant to Instruction 22.19, the trial judge stated that Alexander settled with Knotts and Bermudez. The trial judge explained that the jury was to decide whether LeHane, Bermudez, Knotts, and Cahill, or which of them were negligent and whether that negligence proximately caused Alexander's injuries. The jury was then instructed to compute the damages without concerning themselves with what Alexander may have or should have received in his settlement. The trial judge then instructed the jury to apportion the verdict to attribute a percentage of negligence to each defendant in a percentage range from zero to 100, and that the court would calculate the total amount of the plaintiff's award based on the amount of jury award and apportionment.

We conclude that the trial judge appropriately informed the jury about the fact of settlement. The method the court used to disclose the fact of settlement avoided jury

---

20. *Id.* at 292.

21. *Id.* at 297.

22. *Id.* at 295.

23. *Capital Mgmt. Co. v. Brown,* 813 A.2d 1094, 2002 WL 31854961, (Del.Supr.); *see also Matter of Hilton Hotels Corp.,* 210 A.2d 185, 189 (Del.Ch.1965).

24. *See Arhart,* 798 F.2d at 293 n. 3.

confusion, and did not reveal the amount of settlement. The trial judge did not abuse his discretion when he disclosed the fact of settlement to the jury, and would have been within his discretion if he had disclosed the fact of settlement to the jury at the outset of the trial.

## B. Parties' attempts to elicit testimony regarding the third party settlement

### 1. The Federal Approach

Beyond the need to disclose the fact of settlement to the jury during the course of trial in order to avoid jury confusion, the parties themselves may wish to present evidence of settlement or mention settlement in their opening statements or closing arguments. Federal courts have held that "although Rule 408 bars the admission of evidence of settlement to prove liability or the validity of a claim, it expressly allows such evidence offered for other purposes." [25] However, settlement evidence will not be admitted simply because it is relevant for a purpose other than avoiding jury confusion. "In deciding whether to admit settlement advice for another purpose, a trial court must carefully exercise its discretion and balance the probative value of the evidence for a permissible purpose against the prejudicial effect and risk the evidence will be used for an improper purpose." [26] When the

judge discloses the fact of settlement, it is usually for the purpose of avoiding jury confusion or informing the jury of the alignment of the parties. When a party seeks to admit evidence, disclosing the facts of any settlement (not just the fact of settlement), however, we believe that a trial judge must be more skeptical of the party's purpose. Advocacy lends itself to creative arguments purporting to offer the evidence for the purpose of impeachment or to enhance credibility, but may in reality be an attempt to persuade the jury that a claim has no validity, that another party is liable or that the amount of damages should be discounted to avoid a windfall to the plaintiff[s].

In *McInnis*, the plaintiff was injured in an accident when her motorcycle collided with Florence Poirier's automobile.[27] The plaintiff filed an insurance claim against Poirier, and eventually settled the claim for $60,000 in exchange for a release from Poirier. Later, the plaintiff sued A.M.F. and Harley–Davidson Motor Co. for negligent design. The defendants offered the Poirier release into evidence and the trial judge admitted it. The defendants argued that Rule 408 did not bar the release because it was offered not for the purpose of invalidating the plaintiff's claim against the defendants, but rather to "narrow the issues to allow the jury to determine what

---

**25.** *McInnis,* 765 F.2d at 248. *See also Cochenour v. Cameron Sav. & Loan, F.A.,* 160 F.3d 1187, 1190 (8th Cir.1998); *Breuer Electric Manufacturing Co. v. Tornado Systems of America,* 687 F.2d 182 (7th Cir.1982); *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1124 (7th Cir.1979) (evidence of negotiations admissible on issue of fairness of partial settlement in class action); *Central Soya Co. Inc. v. Epstein Fisheries, Inc.,* 676 F.2d 939 (7th Cir.1982) (evidence of settlement admissible to show partial forgiveness of primary debt in guaranty case); *Reichenbach v. Smith,* 528 F.2d 1072, 1074–1075 (5th Cir.1976) (discussing use of settlement evidence for impeachment); *Hudspeth v. Com-*

*missioner of IRS,* 914 F.2d 1207, 1214 (9th Cir.1990) (valuation data in tax case should have been admitted to show bias on the part of the commissioner, but not to prove the value of the timber).

**26.** *Schlossman & Gunkelman, Inc. v. Tallman,* 593 N.W.2d 374 (N.D.1999) (conducting a broad survey of the federal courts handling of a party attempting to introduce settlement evidence for purposes other than to avoid jury confusion (internal citations omitted)).

**27.** *McInnis,* 765 F.2d at 241.

injuries were actually caused by the defendants."[28] Defendants also argued that the release was offered to attack the plaintiff's credibility.

On appeal, the First Circuit held that from the record it seemed apparent that the trial judge admitted the release on the basis that it related to causation.[29] "Whether cast in terms of 'causation,' 'responsibility,' or the 'validity of the claim,' the defendants wanted the jury to infer from the fact of settlement that the defendants could not be held liable for the amputation of the plaintiff's leg. Admitting the release for this purpose is inconsistent with the policy underlying Rule 408."[30] The court considered the defendant's alternative theory that the release was offered for the purpose of attacking credibility. The court stated that "[a]lthough this contention may have some superficial appeal, we see it as an attempt to obfuscate the critical issue. The release could logically impeach McInnis' credibility only by tending to show that she brought suit against the defendants knowing all the while it was Poirier, and not the defendants, who caused the injury to her leg."[31] Several other circuits have held evidence of third-party settlements inadmissible because the court found the real purpose for offering the evidence was to prove the invalidity of a claim or to discount damages.[32]

The Third Circuit has upheld a trial judge's decision to allow evidence of a pretrial release because it was offered for the purpose of proving bias.[33] The *McShain* court admitted a pretrial release in exchange for $10.00 and the right to use one of the released defendant sister company's employees as an expert at trial against the remaining defendants. The plaintiff sued Cessna and Wings alleging defective design that caused a plane he bought from Wings to be damaged. Before trial, McShain released Butler, the company that initially repaired the plane. In exchange for the release Butler agreed to pay $10.00 and let McShain use a consultant employed by Butler's sister company, Mooney Aircraft as an expert against Cessna and Wings. McShain argued that Cessna offered the release in an attempt to shift the blame for the damage from Cessna (the manufacturer) to Butler (the repairer) contrary to Rule 408.

On appeal, the Third Circuit held that Rule 408 did not bar the release because it was offered for the purpose of proving that the expert was a biased or prejudiced witness.[34] The court stated that the terms of the release "cast doubt upon [the expert's] impartiality."[35] Recognizing that the evidence was being admitted for a purpose other than to prove liability or invalidity of a claim, the court engaged in a Rule 403 analysis to determine whether "the poten-

---

**28.** *Id.* at 246.

**29.** *Id.* at 248.

**30.** *Id.* at 249.

**31.** *Id.*

**32.** *See McHann v. Firestone Tire And Rubber Co.*, 713 F.2d 161, 166 (5th Cir.1983) ("covenant not to sue would have led the jury to deny McHann's claim against Firestone based on the perception that [the settling defendant] would not have paid the substantial sum ... if

it were not the party at fault."); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1235 (7th Cir.1983) (evidence of settlement inadmissible despite defendant's argument that it should be admissible because the amount of settlement bares a relationship to the validity of the plaintiff's claim).

**33.** *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632 (3rd Cir.1977).

**34.** *Id.* at 635.

**35.** *Id.*

tial prejudice from the admission of the agreement outweighed the agreement's probative value."[36]

### 2. Analysis

In the case at hand, the plaintiff alleges error because the trial judge allowed the following question to be asked by defendant Cahill's counsel on cross-examination of plaintiff:

> Q: Mrs. Alexander, you and your husband have reached a settlement on behalf of your son against Defendant Knotts and Bermudez ... and have or will receive moneys for releasing liabilities against them; is that right?
>
> A: Yes, sir.[37]

D.R.E. 408 bars this testimony because counsel asked the question for the purpose of persuading the jury that the persons to blame for the accident had already admitted liability, raising the question that the plaintiff's claim against Cahill might be invalid or to limit a damage award by suggesting that the Alexanders had already been guaranteed some payment toward damages. Cahill's counsel did not ask the question to clarify the alignment of the parties or to avoid jury confusion. The parties knew that the trial judge would disclose the fact of settlement for that legitimate purpose in his closing instructions. This question posed by Cahill's counsel in no way, even arguably, furthered that understanding. Whatever relevance the question and answer may have had was clearly outweighed by the chance of misleading the jury into limiting any damage award by encouraging them to speculate on the "moneys" received or to be received by the Alexanders.

The problem here is further exacerbated by the fact that the parties agreed at pretrial to handle the issue of the settled third-party defendants in their opening statements and in the judge's final instructions. We applaud the parties and the court for following our dicta in *Capital Management* by agreeing before trial how to handle possible jury confusion about third-party settling defendants.[38] We suggested in *Capital Management* that the parties and the court come to an agreement before trial on how to handle explaining third-party settlements to the jury for the purpose of avoiding confusion and telling them the alignment of the parties. The purpose of any pretrial agreement should always be to avoid the inadvertent admission of misleading evidence about any settlement that would prejudice one or more parties. Alexander's testimony on cross did not conform to the pretrial understanding and had no purpose other than to suggest the invalidity of the plaintiff's claim or to discount damages and, therefore, should not have been admitted.

### V.

This case raises the issue of whether "Choice of Evils" is an affirmative defense in a civil suit, and if so, whether a defendant must give notice of an intention to rely on the defense before or in the final Superior Court Rule 16 pretrial stipulation. Defendant LeHane argues that the trial judge did not abuse his discretion by allowing Hoke to testify about the behavior of the children on the "bus from hell." Specifically, Hoke testified that she worked in an atmosphere where her child passengers were regularly threatening, pulled box knives, brought guns on the bus, threw things at her, and used her

---

36. *Id.* (citing Fed. Rule. Evid. 403).

37. Appellant's Op. Br. at 28.

38. *Capital Mgmt.*, 813 A.2d 1094, 2002 WL 31854961 (Del.Supr.).

head as an ashtray.[39] From this sad state of affairs, as she described them, she felt intimidated and coerced into letting the children dictate where they would get off her bus, regardless of applicable, known safety regulations. Alexander argues that this testimony raises the defenses of Justification or Duress, and that the defendants never gave notice in the pleadings or in the pretrial stipulation that they would be injected into the case, thereby prejudicing the plaintiffs when the trial judge nonetheless allowed the testimony.

■■■■ The defenses of Duress and Justification are different defenses in Delaware.[40] Duress is an affirmative defense when the "defendant engaged in the conduct charged to constitute an offense because the defendant was coerced to do so by the use of, or threat to use, force against the defendant's person ...."[41] The Justification defense in Delaware is a general defense that includes the specific defenses of Execution of a Public Duty (11 *Del. C.* § 462), Choice of Evils (11 *Del. C.* § 463), and Self Defense (11 *Del. C.* § 464).[42]

Defendant LeHane argues that the testimony about the children's behavior is relevant because it goes to the defense of duress. Hoke was "coerced" by threat of force to let the children off the bus at an unsafe stop. On the bizarre and lamentable facts of this case, the defense may have substantive merit. However, because Defendant LeHane did not plead the affirmative defense of Duress or raise the spectre of the defense in the pretrial stipulation,

the plaintiffs were never put on notice that they needed to prepare to meet the inferences to be drawn from the facts supporting the defense. Under these circumstances, the defense must be deemed to have been waived.[43]

■■■■ We agree that defendant LeHane's argument fits appropriately in the category of the justification defense of Choice of Evils. "The justification or choice of evils defense is appropriate when the evidence reflects a situation where someone must decide to commit what is otherwise a crime (or as in this case, negligence *per se* ) in order 'to avoid an imminent public or private injury' that was not the result of the defendant's own conduct."[44] Defendant LeHane argues that Hoke had a choice between two evils: (i) violating a regulation that prohibits letting children out of the bus at a stop that requires them to walk across four lanes of traffic or (ii) suffering possible personal injury by the children for not doing so. While this defense may also have merit, the defense never gave notice before trial that it would raise the defense at trial. Whether the factual scenario outlined by Hoke, credible or not, is an affirmative defense, a defense, or a subset of "justification" or "duress" is not the issue. The trial judge's focus should be on whether the issue could have been, but was not, raised pretrial in some form and whether or not the failure to do so caused prejudice to a party without notice of the defense by making it difficult, if not impossible, to

**39.** Appellant's Op. Br. at 21–22.

**40.** *Bell v. Shahan,* 1994 WL 89592 (Del.Super.1994).

**41.** 11 *Del. C.* § 431(a).

**42.** *Feliciano v. State,* 332 A.2d 148, 149 (Del. 1975).

**43.** *Fowler v. Mumford,* 102 A.2d 535 (Del.Super.1954); *Cannelongo v. Fidelity Am. Small Bus. Inv. Co.,* 540 A.2d 435 (Del.1988).

**44.** *Bodner v. State,* 752 A.2d 1169, 1174 (Del. 2000) (*citing* 11 *Del. C.* § 463).

fairly face the issue for the first time during trial.

Rule 16 of the Superior Court Civil Rules states "the participants at [the final pretrial conference] shall formulate a plan for trial, including the presentation of a pretrial stipulation." [45] The subjects to be discussed at pretrial conferences include "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses." [46] After the final conference, the judge shall enter an order reciting the action taken, which "shall control the subsequent course of action unless modified by a subsequent order." [47] Unless the pretrial stipulation resolved the question of notice of a possible defense, however characterized, a trial judge, in the sound exercise of his or her discretion, should not admit facts that suggest the defense for the first time at trial.

## VI

■ The final issue to be addressed is the trial judge's courtroom procedure. At oral argument we were informed that the trial judge required the attorneys to move to a separate area of the courtroom while the jury was present to resolve objections amongst themselves with the objective of reaching a compromise. Counsel at argument were and we are now left with the unfortunate impression that the trial judge invoked this procedure to avoid the necessity of ruling on the objections and not for any expeditious purpose. Delaware Rule of Evidence 103 states:

(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . . [48]

■ An attorney has two choices when confronted by an offer of evidence contrary to the Rules of Evidence—object or do not object. If the attorney chooses not to object, the error cannot be raised for the first time on appeal. If there is a timely objection, the objection should be on the record followed by a prompt, clear ruling on the objection. Under the procedure apparently used at this trial, issues may not have been preserved for appeal because, even though counsel may have objected and the jury heard "objection," there may have been no ruling. Rule 103 requires a timely objection on the record, but it also requires that claims of error be predicated upon a ruling. If a party makes the tactical decision to object, the trial judge must hear from both sides outside the jury's hearing and definitively rule thereby preserving both the objection and the basis for the ruling on the record. Credible trial practice standards demand that trial judges dispose of evidentiary objections effectively and efficiently by clear rulings on the record. We discourage a procedure that leaves the impression that it is designed to avoid ruling on timely objections. Attorneys should not be intimidated into compromising evidentiary objections and positions advocating admission of relevant evidence for the apparent purpose of relieving the trial judge of the danger of ruling erroneously on the objection. Court rules, the rules of evidence and the courtroom procedure used in the

---

45. Del. Civ. R. 16(d).

46. Del. Civ. R. 16(c)(1).

47. Del. Civ. R. 16(e).

48. D.R.E. 103.

case *sub judice* does not advance the purpose and construction of the Rules of Evidence: "to secure fairness in administration, elimination of unjustifiable expense and delay and promotion of growth and development of law of evidence to the end that the truth may be ascertained and proceedings justly determined." [49] A trial judge "is something more than a mere umpire between adversaries. His function is to ensure that the rules of practice and evidence are applied to insure a fair trial ...." [50] Whatever the motive, the courtroom procedure used here does not advance the goal of ensuring a fair trial and we firmly disavow the practice.

## VII

We conclude that the trial judge erred when he allowed the police officer to give a lay opinion of the cause of the accident contrary to D.R.E. 701. We further conclude that the trial judge erred by admitting evidence of settlement between the plaintiff and third-party defendants that went beyond the purpose and scope of D.R.E. 408. We further conclude that the trial judge erred when he allowed defendant Cahill to introduce evidence supporting a "Choice of Evils" defense without notice to the other parties either in the pleadings or the pretrial stipulation under circumstances that clearly prejudiced those parties. Finally, we conclude that the trial judge's procedure for avoiding ruling on timely evidentiary objections interjects unnecessary delay into a trial, raises the spectre of intimidating counsel into compromise of meritorious evidentiary objections and the prospect of chilling proffers of relevant testimony and substantially hinders the goal of ensuring a fair trial.

The judgment is reversed and remanded for a new trial.

---

49. D.R.E. 102.

50. *State Highway Dept. v. Buzzuto,* 264 A.2d 347, 351 (Del.1970).