**EUROPLASMA, S.A., Plaintiff,**

v.

**SOLENA GROUP, INC., Defendant.**

**Civil Action No. 08–01089 (HHK).**

United States District Court,
District of Columbia.

March 30, 2009.

---

Joanne L. Zimolzak, McKenna Long & Aldridge, LLP, Washington, DC, for Plaintiff.

James M. Mesnard, Seyfarth Shaw, LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HENRY H. KENNEDY, JR., District Judge.

Plaintiff Europlasma S.A. ("Europlasma") brings this action to enforce the terms of a promissory note requiring Defendant Solena Group, Inc. ("Solena") to pay Europlasma the principal amount of 394,517, plus interest at an annual rate of 4%, in consideration for equipment that Solena purchased and received from Europlasma. Before the court is Solena's motion to dismiss or, in the alternative, to stay and compel arbitration [## 6, 7] and Europlasma's motion for summary judgment [# 9]. Upon consideration of the motions, the oppositions thereto, and the arguments of counsel at a hearing, the court concludes that Solena's motion to dismiss should be denied and Europlasma's summary judgment motion should be granted.

## I. BACKGROUND

### A. Promissory Note

On or about October 3, 2006, Solena ordered a plasma torch from Europlasma and paid the shipping costs and part of the

purchase price. On September 14, 2007, the parties executed an unsecured promissory note ("Note") for the balance of €394,-517 remaining on the torch purchase, plus interest at an annual rate of 4%. Compl. ¶¶ 6–7; Compl. Exh. 1 ("Note"). The Note provides that if Solena fails to meet its obligations under the Note, Europlasma is entitled to recover all costs, including reasonable attorney's fees, incurred in collecting or attempting to collect on the note, "whether or not a lawsuit is commenced." Note at 1. Solena did not make the required payment on the Note by its due date of January 10, 2008.

## B. Master Teaming Agreement

On May 29, 2007, after the torch purchase and before the execution of the Note, the parties entered into the Master Teaming Agreement ("Agreement"). Mot. to Dismiss at 2 & Exh. 2 ("Master Teaming Agreement"). Among other things, the Agreement states that "Solena commits to treat Europlasma as its Preferred Provider of torch systems, and as such, Solena commits to purchase all of the plasma torch systems from Europlasma for Solena Projects utilizing Solena Technology from the date of this agreement." Agreement ¶ 1.2.1. In consideration for Europlasma serving as Solena's exclusive source, Europlasma agreed to provide Solena with discount pricing for the purchase of multiple torch systems. *Id.* ¶ 1.2.2. The parties agreed that the Agreement would have a term of three years "from the date first above written, which term may be renewed or extended by the parties." *Id.* ¶ 5. 1.

The Agreement includes an alternative dispute resolution clause that reads:

6.2 If [sic] the event of a controversy, claim or dispute arising out of or relating to this Agreement, the representatives of the Parties shall meet and confer in good faith negotiations with the object of reaching mutual agreement and a settlement. If the Parties' representatives are unable to agree, such representatives shall promptly commence discussion with respect to resolving the dispute through non-binding alternative dispute resolution ("ADR") procedures fashioned by the representative themselves or with the assistance of persons or organizations experienced in ADR procedures such as the International Chamber of Commerce.

6.3 Any controversy, claim or dispute arising out of or relating to this Agreement, or the breach thereof, that the Parties can not [sic] amicably resolve under the procedures in Article 6.2., shall be settled by arbitration administered by the International Chamber of Commerce under its Commercial Arbitration Rules using an arbitrator that both Parties consent to in writing, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The place of arbitration shall be London, England and the arbitrator shall determine the matters in dispute in accordance with Applicable Law. The parties agree that the award of the arbitrator shall be binding and shall be the sole and exclusive remedy among them regarding claims, counterclaims, issues or accountings presented to the arbitrator.

*Id.* ¶¶ 6.2, 6.3.

Finally, the Agreement contains an integration clause, specifying that "[t]his Agreement constitutes the entire agreement between the Parties, relating to the

subject matter hereof, and supersedes any previous agreements or understandings between them, whether oral or written." *Id.* ¶ 10.1.

## II. ANALYSIS

### A. Because The Note Is Unambiguous, The Court Will Not Consider Extrinsic Evidence

■ Europlasma's complaint raises a single claim: breach of promissory note. Solena moves to dismiss Europlasma's complaint on the grounds that the dispute over the Note is subject to the Master Teaming Agreement's mandatory arbitration clause. Europlasma responds that the Note contains no arbitration provision and because it is unambiguous on its face, the court should not consider any extrinsic evidence, such as the Master Teaming Agreement. The court agrees with Europlasma.

■ In relevant part, the Note states that Solena promises to pay Europlasma the sum of 394,517, plus interest on the unpaid principal at the annual rate of 4% from the date of the Note, September 14, 2007. The Note provides that the unpaid principal and accrued interest shall be payable in full on January 10, 2008. The Note could not be clearer and is unambiguous. *See Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992) ("[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly suscepti-

ble of different interpretations or may have two or more different meanings.").[1] Under well-settled principles of contract law, "[u]nambiguous written agreements should be enforced according to their terms, without using extrinsic evidence 'to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.'" *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 210 (3rd Cir. 2005) (*quoting Eagle Indus. v. DeVilbiss Health Care*, 702 A.2d 1228, 1232 (Del. 1997)); *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1097 (Del.2002) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create ambiguity."). Solena argues that the Master Teaming Agreement requires arbitration of the dispute over nonpayment of the Note. Because the Note is unambiguous, however, the court will not consider evidence *de hors* the Note, including the Master Teaming Agreement.

### B. Were The Court To Consider the Agreement, It Would Find That The Dispute Is Not Subject to Arbitration.

■ Even if the court were to consider the Agreement, it would find the Agreement's arbitration provision does not "arise out of or relate to the Agreement" ¶ 6.2, and therefore does not require arbitration of the dispute regarding non-payment of the Note.[2]

---

1. Delaware law applies because both the Note and the Agreement specify that they should be governed and construed in accordance with Delaware law. Note at 1; Agreement ¶ 6.1.

2. The Supreme Court of Delaware has set forth the analysis a court should undertake when determining whether the claim before it is subject to arbitration. *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del.2002). First, the court must "determine

whether the arbitration clause is broad or narrow in scope," then "apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration." *Id.* If the arbitration clause is narrow, the court "will ask if the cause of action pursued in court directly relates to a right in the contract." On the other hand, if the clause is broad, "the court will defer to arbitration on any issues that

■ When a contract contains a broad arbitration clause, as here,[3] to determine whether the dispute at issue is subject to arbitration, the court must ask whether the claim at issue would be assertable even if the contract containing the arbitration clause did not exist. *Parfi Holding AB*, 817 A.2d at 155. Where the purportedly arbitrable claim "would be independently and separately assertable" even if the arbitration clause contract did not exist, the claim is not "in connection with" the contract containing the arbitration clause. *Id.*

■ Under this analysis, the court finds that Europlasma's claim based on Solena's nonpayment of the Note would exist even in the absence of the Agreement. The purpose of the Agreement was to establish Europlasma as Solena's exclusive torch provider and to guarantee Solena discounting pricing in consideration for that exclusive arrangement. The Agreement creates no rights or obligations necessary for Europlasma's claim for breach of a promissory note. Indeed, no provision in the Agreement creates an obligation upon which Europlasma could base a claim of breach of a promissory note. In contrast, the Note alone provides a basis for Euro-

plasma's claim. Accordingly, even were the court to consider the Agreement, it would conclude that Europlasma's claim is not subject to arbitration.[4]

## C. Europlasma Is Entitled to Summary Judgment, As Well As Attorneys' Fees and Costs.

Solena does not dispute that the Note contains no arbitration clause, that the Note obligated Solena to pay Europlasma by January 10, 2008, and that Solena has failed to do so. Because there is no genuine dispute of material fact, the court finds that Europlasma is entitled to summary judgment.

## III. CONCLUSION

For the foregoing reasons, Solena's motion to dismiss, or in the alternative, to stay and to compel arbitration [## 6, 7] is **DENIED** and Europlasma's cross-motion for summary judgment is **GRANTED** [# 9]. An appropriate order accompanies this memorandum opinion.