IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DWAYNE ROSE, | § | |
| | § | No. 126, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2110011805 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: February 28, 2024
Decided: May 10, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

This 10th day of May 2024, after careful consideration of the parties' briefs and the record below, and following oral argument, it appears to the Court that:

(1)    A Superior Court jury convicted Dwayne Rose of carrying a concealed deadly weapon. On appeal, Rose claims that the Superior Court failed to rule on a defense objection relating to body camera evidence. Instead of addressing the objection, Rose claims that the court improperly pressured defense counsel to confer with the prosecution to resolve it. We are unconvinced by the argument and affirm his conviction.

(2)    On October 26, 2021, Wilmington Police Department Officers Marino and Connor responded to a call about an altercation on Sycamore Street in the City

of Wilmington.[1]  Corporal Marino's body camera captured the incident.[2]  As the Officers approached, they saw Dwayne Rose and his mother, Sherjuan Williams, shouting and arguing.[3]  Williams was irritated because Rose was living in her car and would not return it and remove his belongings.[4]  Officer Marino testified that, as the parties shouted back and forth and Williams threw things out of the car, he heard Rose say, "I'm going to use this."[5]  Rose then pulled out a loaded firearm from under his jacket.[6]  Officer Marino grabbed the gun and took Rose into custody.[7]

(3)     Officer Marino testified that he could not see the gun before Rose exposed the weapon because it was under Rose's jacket.[8]  Officer Connor testified that he did not see the gun before Rose exposed it because it was concealed.[9]  Ms. Williams testified that she was aware that Rose had a firearm and had seen it before the police were called and while the police were on scene.[10]  Rose testified that he did not realize he was concealing a firearm and did not intend to conceal the gun.[11]

(4)     The State charged Rose by indictment with Possession of a Firearm During the Commission of a Felony, Attempted Aggravated Menacing, and Carrying

---

[1] App. to Appellant's Opening Br. at A33–35; A71–72 [hereinafter "A__"].
[2] A38–39.
[3] A33–35; A71–72.
[4] A80.
[5] A35–36; A40.
[6] *Id.*
[7] A35–36.
[8] A36.
[9] A73.
[10] A80–81.
[11] A94–95.

a Concealed Deadly Weapon.[12]  The State eventually dropped all charges except the Concealed Deadly Weapon charge.[13]  Before trial, counsel could not agree on the scope of redactions to the police bodycam footage.  There were two versions of the video – one with agreed redactions and another with a three-second clip of the police officer's notepad showing what was described as a drawing of a penis.[14]  According to the Officers, someone drew the picture on the notepad as a prank.[15]  Rose objected to redacting the three second clip from the bodycam video.[16]

(5)     After jury selection, the trial judge permitted *voir dire* of Officer Marino to decide the redaction issue.  The court heard from the Officer and determined that the three-second clip of the notepad drawing was "completely irrelevant."[17]  It also found that, even if it was relevant, "the probative value is substantially outweighed by at least confusing the issues, misleading the jury."[18]  The court allowed the State to redact the notepad clip in the video version admitted into evidence.

(6)     At trial, Rose objected again when the State was about to show the redacted video to the jury:

---

[12] A4–A5.
[13] A16.
[14] A8.
[15] A9.
[16] *Id.*
[17] A26–27.

[18] *Id.*

3

[DEFENSE COUNSEL]: Objection. May we approach, your Honor?
THE COURT: Discuss it first. You may be able to resolve it.
(Counsel conferring.)
THE COURT: Were you able to resolve it?
[DEFENSE COUNSEL]: Yes, your Honor.
THE COURT: All right.
(Playing of video.).[19]

(7)     The State played a portion of the redacted video.  After the State completed the direct examination of Officer Marino, defense counsel played the entire redacted video.[20]  The defense relied on the video throughout trial by referring to the redacted video in its opening statement, cross-examination, and closing argument.[21]  The jury eventually convicted Rose of Carrying a Concealed Deadly Weapon.  The court sentenced Rose to 5 years at Level 5, suspended for one year at Level 3.[22]

(8)     Relying on *Alexander v. Cahill*,[23] Rose argues on appeal that the court improperly pressured defense counsel to confer with the State to resolve the video objection.[24]  In *Alexander*, this Court questioned a trial judge's courtroom practice of having opposing counsel confer on objections before issuing a ruling.  The trial judge "required the attorneys to move to a separate area of the courtroom while the jury was present to resolve objections amongst themselves with the objective of

---

[19] A39.
[20] A39–40; A45.
[21] A32; A56; A102; A106.
[22] Ex. A, Page 1.
[23] 829 A.2d 117 (Del. 2003).
[24] Opening Br. at 8; Reply Br. at 2.

reaching a compromise."[25]  It appeared that the trial judge used that procedure to avoid ruling on objections.  We held that, "[a]lthough not warranting reversal on its own," the practice was frowned upon.[26]  As we held, "[i]f a party makes the tactical decision to object, the trial judge must hear from both sides outside the jury's hearing and definitively rule thereby preserving both the objection and the basis for the ruling on the record."[27]

(9)  Here, the circumstances surrounding the trial court's direction to confer are different from *Alexander*.  The trial judge had already ruled on defense counsel's objection to the redacted video.  Thus, it appears that the objection related to playing the video, which could be resolved by counsel.  Further, it was the only ground for error on appeal and therefore does "not warrant[] reversal on its own."[28]  Finally, Rose did not raise the argument at trial, meaning we review for plain error.[29]  For an error to be plain, it must be clearly prejudicial.[30]  Rose did not suffer any prejudice.

---

[25] *Alexander*, 829 A.2d at 129.

[26] *Id.* at 119.

[27] *Id.* at 129.

[28] *Id.* at 119; *cf. Graham v. State*, 933 A.2d 1249, 2007 WL 2367763, at *2 (Del. Aug. 21, 2007) (TABLE) (holding the trial judge's failure to give a prompt, clear ruling on the objection "was rendered harmless error by her later application of the *Getz* factors, after the evidence was admitted.").

[29] *Baker v. State*, 906 A.2d 139, 150 (Del. 2006) (citing *Kurzmann v. State*, 903 A.2d 702, 719 (Del. 2006)).

[30] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) ("Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.  Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." (citations omitted)).

After the State played only a portion of the redacted video, the defense played for the jury the entire redacted video, which appeared to satisfy defense counsel. The redacted video was also cumulative of witness testimony which strongly supported Rose's guilt. All individuals in the body camera footage testified at trial. The police saw Rose with the gun and testified it had been concealed. And while Rose testified that he did not intend to conceal the weapon, he admitted the gun was concealed.[31] There was no plain error.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[31] A95 (Direct examination) ("Q. Did you intend to conceal that firearm? A. I did not,"); *id.* ("Q. Okay. So, you didn't realize it was concealed? A. Exactly."); A105 (Closing arguments) ("In the video, it's concealed."); A106 ("There's nothing in the evidence presented by the State that shows he intentionally – that he knowingly covered up that gun with a jacket.").