Debra WRIGHT, Plaintiff Below,
Appellant/Cross–Appellee

v.

Michael MOORE, and Simco Sales Service of Pennsylvania, Inc., a Pennsylvania Corporation, Defendants Below,
Appellees/Cross–Appellants.

No. 392, 2006.

Supreme Court of Delaware.

Submitted: March 28, 2007.
Decided: July 2, 2007.

Gary W. Aber, of Aber, Goldlust, Baker & Over, Wilmington, DE, for Plaintiff Below, Appellant/Cross–Appellee.

William L. Doerler of White and Williams, LLP, Wilmington, DE, for Defendants Below, Appellees/Cross–Appellants.

Before HOLLAND, BERGER and RIDGELY, Justices.

BERGER, Justice:

In this appeal, we again consider the admissibility of settlement evidence. Appellant was involved in two motor vehicle accidents, a few months apart, and sued the drivers of both vehicles in a single complaint. One driver settled before trial. The trial court allowed the other driver to argue to the jury that the settlement fully compensated appellant for all of her injuries. This Court has explained that, if necessary to avoid confusion, a jury may be told that one party to a lawsuit has settled. Here, however, there was no risk of jury confusion, and appellee used the settlement information for an improper purpose. Accordingly, we must reverse.

### Factual and Procedural Background

In March 2002, Debra Wright collided with a car, owned by Patricia A. Green, that was stopped in the roadway. The day after the accident, Wright sought medical treatment for injury to her left knee. Thereafter, Wright's left arm started to hurt, and she received physical therapy for pain and stiffness in her leg, arm and neck. Wright was still suffering pain in September 2002, when she was involved in a second accident.

In the September accident, Michael Moore was attempting to back his delivery truck into a Wawa parking lot, when the truck struck the front of Wright's car. Moore testified that when he arrived at the Wawa, there were two cars parked in the loading area. He double-parked on the road in front of the Wawa, put on his flashing lights, and waited for the two cars to pull out. After the area cleared, Moore drove up to the entrance, swung the truck out into the road, and started backing into the parking lot. Moore claims that he was going very slowly, checking both of the rear view mirrors. Wright said that he was only looking in his right mirror, and that he would have seen her car if he had looked in the left mirror. She testified that she was stopped, waiting to exit the parking lot, when she saw Moore's truck backing up. According to Wright, there was nothing she could do to avoid the collision because there were cars waiting behind hers.

After the collision, Wright testified that she was scared, but did not believe she was injured. A police officer came to investigate, and issued a citation to Moore for inattentive driving. Moore paid the ticket, but testified that he did so because he did not want to spend the time necessary to contest it. The day after the accident, Wright went to the hospital because she "couldn't move." Wright was treated conservatively, with medication and physical therapy, for approximately one year. In September 2003, Dr. Bikash Bose performed a cervical diskectomy and decompression as well as an interbody fusion. Two years later, Bose performed additional disk surgery in an effort to relieve Wright's severe neck and shoulder pain. Wright incurred more than $100,000 in medical bills.

In July 2003, Wright filed suit against Green, Moore, and Moore's employer, Simco Sales Service of Pennsylvania, Inc. The complaint alleged that the negligence of Green and Moore caused Wright to "sustain severe and permanent injuries including, but not necessarily limited to, injuries

to her left upper extremity ...; to her left lower extremity ...; to her neck and her back."[1] It demanded judgment against the defendants, jointly and severally. Interestingly, prior to trial Moore asked the court to rule that there was no joint and several liability. Wright argued in support of joint and several liability, claiming that the injuries from the two accidents could not be apportioned. By the time of trial, however, Green had settled. As a result, Wright conceded that there would be no claim of joint and several liability.

At trial, the issue of Wright's settlement with Green first arose during Moore's opening statement. The trial court ruled, over Wright's objection, that Moore could discuss the fact that there was a settlement, but not the amount of the settlement. Moore then argued to the jury that Wright had changed tactics after the settlement. Instead of claiming that both drivers were responsible for her injuries, as she had before, Wright's witnesses were now saying that the second accident was the more serious.

The settlement again became an issue during Wright's cross-examination. The trial court ruled, again over objection, that Moore could examine Wright about the release given in connection with the settlement. Moore reviewed with Wright both the release and the allegations in the complaint, and Wright agreed that the complaint alleged neck injuries from the first accident as well as the second. In closing, Moore again pointed out that the complaint alleged the same injuries in the first accident as in the second. Then, at the end of his closing, Moore said:

> And, in fact, Ms. Wright has been compensated for all those injuries laid out in that complaint, all the exact inju-

ries she's claiming against Mr. Moore. She's compensated for her neck, for her back, for her knee, for her ankle, for her arm. It's all in the complaint. It's all right there. She signed that release one day before Dr. Bose testifies.[2]

The jury returned a defense verdict, answering "No" to the question, "Do you find that defendant, Michael Moore, was negligent in a manner proximately causing injuries to the plaintiff, Debra Wright?" This appeal followed.

### Discussion

Wright argues that the trial court erred by: 1) allowing Moore to ask questions about the Green settlement and then letting him argue to the jury that the settlement compensated Wright for both accidents; and 2) failing to instruct the jury that Moore's violation of the motor vehicle laws constituted negligence *per se*. Moore filed a cross appeal, and argues that the trial court erred by: 1) allowing medical testimony that lacked a proper foundation; 2) failing to instruct the jury about the legal significance of a finding that the accident occurred in a parking lot; and 3) instructing the jury that it could compensate Wright for emotional distress.

■ Rule 408 of the Delaware Rules of Evidence provides that evidence of a settlement is inadmissible "to prove liability for or invalidity of the claim or its amount." In *Alexander v. Cahill*,[3] this Court addressed the limited circumstances under which settlements with third-party tortfeasors are admissible:

> Delaware courts, as the federal courts, allow judges to disclose the fact of settlement by third-party defendants for a purpose other than to prove liability or

---

1. Appellant's Appendix, A–13–14.

2. Appellant's Appendix, A–190.

3. 829 A.2d 117 (Del.2003).

invalidity of the claim or its amount. Specifically, we have stated, "[I]t would not have been improper for the trial judge to tell the jury that [one of the defendants] was no longer part of the case and instructing them that they need not speculate why. The purpose of the instruction would have been to inform the jury of the alignment of the parties."

\*    \*    \*    \*

In the case at hand, ... the trial judge allowed the following question to be asked by defendant['s] counsel on cross-examination of plaintiff:

> Q: Mrs. Alexander, you and your husband have reached a settlement on behalf of your son against Defendant Knotts and Bermudez ... and have or will receive moneys for releasing liability against them; is that right?
>
> A: Yes, sir.

D.R.E. 408 bars this testimony because counsel asked the question for the purpose of persuading the jury that the persons to blame for the accident had already admitted liability, raising the question that the plaintiff's claim against Cahill might be invalid *or to limit a damage award by suggesting that the Alexanders had already been guaranteed some payment toward damages.*[4]

Moore's questions about Wright's release, and the allegations in the complaint, were more clearly designed to demonstrate that Wright had been compensated. Then, in his closing, Moore went even further. He specifically told the jury that Wright had been fully compensated through her settlement with Green. Both the questions and the closing comments were highly improper. In other circumstances, we would expect Wright to have interrupted the closing in an effort to cure Moore's prejudicial statements. Here, however, Wright had objected during the opening and again when Wright was being cross-examined. The trial court was emphatic about its ruling. Thus, Wright's failure to object for a third time, during the closing, is excusable.

■ Wright also argues that the trial court erred in failing to instruct the jury that Moore's acceptance of a citation for inattentive driving constitutes negligence *per se.* The trial court, relying on *Joseph v. Monroe,*[5] ruled that the inattentive driving statute does not provide a specific standard of conduct and, as a result, violation of the statute is not negligence *per se.* In *Monroe,* this Court held that violation of a set of playground rules in a Teacher's Handbook does not constitute negligence *per se.* Among other reasons for its decision, the Court noted that a rule requiring the playground area to be "pleasant and safe" did not set forth any specific duty.

The *Monroe* decision is inapposite. It is settled law that violation of a statute enacted for the safety of others constitutes negligence *per se.*[6] The motor vehicle statutes, without doubt, are enacted for the safety of the traveling public. The inattentive driving statute, 21 *Del. C.* § 4176(b), provides that anyone who "operates a vehicle and who fails to give full time and attention to the operation of the vehicle, or ... fails to maintain a proper lookout while operating the vehicle, shall be guilty of inattentive driving." We hold that it is sufficiently specific to support an instruction on negligence *per se.*

■ Moore raises three arguments in his cross appeal. First, he says that the

---

**4.**   829 A.2d at 124–127(Emphasis added.).

**5.**   419 A.2d 927 (Del.1980).

**6.**   *Duphily v. Delaware Electric Cooperative, Inc.,* 662 A.2d 821, 828 (Del.1995).

trial court erred in allowing Bose to provide expert testimony. Moore argues that Bose's opinions lacked a proper foundation because he failed to review any medical records for the period before the second accident. In addition, Bose was unable to apportion the extent of Wright's injuries attributable to each accident.

This argument lacks merit. Bose based his initial opinion on his patient's description of her medical history. Prior to his trial deposition, Bose reviewed Wright's medical records and reconfirmed his opinion. Although he was unable to reach a conclusion as to exactly how much of Wright's injuries were caused by each accident, there is no requirement that a medical expert be able to make that calculation. The trial court acted within its discretion in allowing Bose's testimony.[7]

■ Moore next argues that the trial court erred in failing to instruct the jury that, if the accident occurred in the parking lot, and not on the road, the inattentive driving statute would not be applicable. This argument fails, among other reasons, because the record evidence establishes that Moore's truck was at least partially on the road at the time of the collision.

Finally, Moore complains that the trial court should not have instructed the jury that Wright could recover for emotional distress. He says that, because Wright was suffering from mental and emotional problems before the accident, she was required to present expert testimony to establish that the accident caused any mental or emotional damages. The trial court gave the jury a standard instruction on damages, which included the statement that

pain and suffering may include mental as well as physical components.[8] From the record, it does not appear that Wright was seeking any damages specifically associated with mental or emotional harm. She was claiming physical injury and pain and suffering associated with the physical injury. As a result, we find no error in the instruction, as given.

### Conclusion

Based on the foregoing, the judgment of the Superior Court is reversed and this matter is remanded for a new trial. Jurisdiction is not retained.

---

7. *E.I. DuPont De Nemours & Co. v. Pressman,* 679 A.2d 436, 448 (Del.1996).

8. The court said, "In evaluating pain and suffering, you may consider its mental as well as its physical consequences. You may also consider such things as discomfort, anxiety, grief, or other mental or emotional distress that may accompany any deprivation of usual pleasurable activities and enjoyments." Appellees' Appendix, B–127.