Tina A. ATWELL and Ashley Atwell a minor by her next friend Tina A. Atwell, Plaintiff Below, Appellants,

v.

RHIS, INC. dba Reliable Home Inspection Service, a Delaware Corporation and Lititz Mutual Insurance Company, a Foreign Corporation, Defendants Below, Appellees.

No. 201, 2008.

Supreme Court of Delaware.

Submitted: April 22, 2009.
Decided: May 22, 2009.

William D. Fletcher, Jr. (argued), Schmittinger & Rodriguez, P.A., Dover, DE; Mary F. Higgins, McGivney & Kluger, P.C., Wilmington, DE, for appellants.

Norman H. Brooks, Jr. (argued), Theodore J. Segletes, III, Marks, O'Neill, O'Brien & Courtney, P.C., Wilmington, DE, for appellee RHIS, Inc.

Stephen P. Casarino (argued) and Sarah C. Brannan, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, DE, for appellee Lititz Mutual Insurance Company.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice:

Tina Atwell filed suit in the Superior Court herself and on behalf of her daughter, Ashley Atwell, against Reliable Home Inspection Service, Lititz Mutual Insurance Company, and Richard Davis. Atwell and Davis settled before trial. The trial judge granted Lititz's motion for summary judgment and the trial proceeded against Reliable. The jury returned a unanimous verdict in favor of Reliable. Atwell now appeals the trial judge's grant of summary judgment in favor of Lititz and the trial judge's denial of her motion for a new trial. We find that the trial judge appropriately granted summary judgment to Lititz. In his closing argument, Reliable's counsel implied that the fact Davis had settled amounted to admitting liability. We conclude, for that reason, that the trial judge should have granted Atwell's motion for a new trial. Accordingly, we affirm in part, reverse in part, and remand for a new trial.

## FACT AND PROCEDURAL BACKGROUND

On December 8, 2000, Atwell purchased a home from Richard Davis. Before the purchase, Atwell hired Reliable to inspect the home in conformity with standards set forth by the American Society of Home Inspectors ("ASHI"). In completing the inspection, however, Reliable agent John Kerrigan misidentified the home's heating system. He mistook a down-flow system for an up-flow system. Down-flow systems work by forcing hot air into ducts located below the heating system, and up-flow systems pump hot air into ducts above the heating system. Because Kerrigan misidentified the heating system, he failed to inspect many of its components and fell short of ASHI standards, which call for inspectors to examine all visible parts of a system. Kerrigan also erred in several other aspects of his home inspection. For example, he identified the attic as having gable end vents; in fact, the attic did not have any venting.

Because of the poorly graded land around the home and its proximity to a swamp, subsurface water infiltrated the heating system's underground ductwork. The heating system distributed this excess moisture throughout the house, resulting in significant damage from dry rot, mold, bacterial growth, and excessive humidity. Atwell filed a claim with Lititz for the damage. Lititz denied this claim, asserting that Atwell's policy excluded damage from mold and subsurface water. Atwell later replaced the heating system with an up-flow system—a change that abated the above described problems.

In 2005, Atwell filed suit against: (1) Davis for fraud and improper disclosure of the problems with the home; (2) Reliable for negligence in its home inspection; and (3) Lititz for wrongfully declining coverage under its insurance policy. The trial judge granted Lititz summary judgment, finding that as a matter of law Atwell's insurance policy did not cover her damages. Atwell proceeded to trial against Reliable and

Davis, which resulted in a mistrial.[1] After settling with Davis, Atwell continued to a second trial against Reliable, as part of which Reliable prosecuted its third party action against Davis.

Before the second trial, Atwell moved to preclude any disclosure to the jury that she had settled with Davis. The trial judge denied that motion, ruling that Reliable could refer to the settlement but could not introduce evidence of the settlement amount. Right before opening statements, the trial judge gave the following instruction:

> I have one additional instruction for you. Now, at the beginning of this case, you heard a reference to another defendant that was in this case, that's the defendant known as Mr. Davis. Members of the jury, it is proper for you to know that one of the defendants is no longer in this case, but you need not and should not speculate why that person is no longer in the case. Keep that in mind.

The trial judge also instructed the jury that they were to "disregard any personal opinion or belief concerning the testimony or evidence which an attorney offers during the opening and closing statements."

Over Atwell's objections, Reliable's counsel referred to Davis' settlement during opening and closing statements. The first three references occurred in Reliable's opening statement. Reliable's counsel first said:

> Now, when the plaintiffs filed this complaint against [Reliable and Lititz], Reliable then through me, filed a cross claim against Mr.
> Davis. We're essentially saying that we did nothing wrong. If we're found to be liable, it's you Mr. Davis, who should pay the plaintiff her damages. Essen-

tially, at this point, since Mr. Davis has settled, you are not going to hear this part of the plaintiffs' case. [Plaintiffs' counsel] has no incentive now to prove to you that Mr. Davis was at fault.

The second reference occurred when Reliable's counsel used a power point slide to display the former case caption to the jury while explaining Atwell's claims against Davis. The third reference consisted of Reliable's counsel's rhetorical question: "Where is Mr. Davis? He's a defendant in this case. Where is he? He has an obligation to defend our cross claim, and he's chosen not to appear."

Reliable subpoenaed Davis, who testified at trial. Reliable's counsel examined Davis about the errors in his disclosures to Atwell. Although Davis did not admit to any wrongdoing, his direct testimony buttressed Reliable's claim that Davis had knowingly concealed problems with the home.

The fourth (and final) reference to the settlement occurred in Reliable's closing, when Reliable's counsel stated:

> You recall also the testimony of Mr. Davis. He essentially came in and fell on the sword. I mean, he's a nice fellow. He has settled out; he doesn't have a worry now in this case. He's not in jeopardy. He essentially fell on the sword. . . . If there was a tortfeasor here, that the fraud was by Mr. Davis. There was an intent by Mr. Davis to induce the [p]laintiff to buy the house, and it worked.

During its deliberations, the jury sent the trial judge a written question. They asked: "If the jury answers zero dollars for question number four . . . does question seven rely on that question?" Question four concerned the amount of Atwell's

---

1. The record suggests that the jury voted eleven to one in favor of Atwell on the counts against Reliable and unanimously on the breach of contract claim against Davis.

damages, and question seven instructed the jury to "state the percentage of liability you attribute to each defendant." The trial judge responded that if the jury found that the answer to question four was zero, then question seven would be irrelevant. Later, the jury submitted two additional questions to the court:

(1) Why do the instructions ... say we have to decide on Davis' liability if he has settled?

(2) Our questions one, two, and three only refer to Reliable, so should we only be considering Reliable's liability first?

In response, the trial judge instructed the jury to examine the entirety of the relevant portion of the instructions, and answered yes to the second question.

The jury later returned a unanimous verdict in Reliable's favor on Atwell's complaint. Atwell moved for a new trial, which the trial judge denied. This appeal followed.

## DISCUSSION

### I. The Trial Judge Did Not Err by Granting Lititz Summary Judgment.

All the experts in this case agreed, and the trial judge found, that the subsurface water, which had infiltrated the sump area under the heater, caused the home's high humidity level. Accordingly, the trial judge determined that the issue underlying Atwell's claims against Lititz involved only a legal issue—analyzing Atwell's insurance policy to determine whether it afforded coverage for this particular loss. The trial judge determined that the "ensuing loss" clause in the insurance contract unambiguously and specifically excluded damage from mold and subsurface water. The trial judge also determined that the

structural damage to the home's walls and ductwork was not a covered "ensuing loss," but instead was a loss caused directly by the subsurface water and subsequent mold infiltration.

Atwell claims that the trial judge erred by granting summary judgment to Lititz because: (1) the record was not sufficiently developed; (2) the record contained genuine issues of material fact; and (3) the dry rot, bacterial overgrowth and mold were "ensuing losses" that were covered by her policy. We find no merit to these claims and affirm on the basis of the trial judge's well reasoned ruling on summary judgment.

### II. Atwell is Entitled to a New Trial Against Reliable.

Atwell argues that Reliable's counsel improperly invoked Atwell and Davis' settlement to suggest that Atwell's claim against Reliable is meritless because Davis essentially admitted fault and that, therefore, the defendant actually at fault had compensated Atwell. Reliable responds that its counsel's statements were proper, but even if they were not, the trial judge's instructions to disregard statements made by the attorneys cured any error.

■ We review a trial judge's denial of a motion for a new trial for abuse of discretion.[2] "We will find an abuse of discretion 'if the jury verdict was against the great weight of evidence, no reasonable jury could have reached the result, and the denial was untenable and unreasonable.' "[3]

■ As we explained in *Wright v. Moore*, "Rule 408 of the Delaware Rules of Evidence provides that evidence of a settlement is inadmissible to prove liability

**2.** *Estate of Rae v. Murphy*, 956 A.2d 1266, 1272 (Del.2008).

**3.** *Id.* (quoting *Wilhelm v. Ryan*, 903 A.2d 745, 755 (Del.2006)).

for or invalidity of the claim or its amount."[4] In *Capital Management Co. v. Brown*, we determined that "[t]wo principles underlie Rule 408: 1) the evidence of compromise is irrelevant since the offer may be motivated by a desire to terminate the litigation rather than from any concession of weakness of position; and 2) public policy favors compromise in settlement disputes."[5] We recognized, however, that "D.R.E. 408 does not require exclusion of settlement related evidence when the evidence is offered for another purpose."[6]

In particular, we have acknowledged the "need for the trial judge or the parties themselves to disclose to the jury the fact that a third party defendant had settled to avoid confusion."[7] "[T]he trial judge, however, must be more skeptical of the party's purpose when a party seeks to admit evidence disclosing the facts of a settlement."[8]

We have addressed situations factually similar to the case at bar on several occasions. First, in *Capital Management*, we held that the trial judge did not abuse his discretion by refusing to instruct the jury that a third party defendant was not present at trial because of a settlement.[9] We noted "that questions about whether third party settlements will be admissible at trial or how the trial judge should explain alignment of the parties could best be resolved during pre-trial proceedings."[10]

In *Alexander v. Cahill*, we concluded that although it is permissible for a trial judge to disclose a third party settlement to the jury, the trial judge's decision to admit testimony regarding the third party settlement in that case constituted reversible error.[11] In *Alexander*, the plaintiff filed a personal injury suit against four defendants after a multiple vehicle accident.[12] Two defendants settled, and the trial proceeded against the remaining two defendants.[13] Defense counsel, questioning the plaintiff's mother during cross examination, asked: " 'you and your husband have reached a settlement on behalf of your son against the Defendant[s] Knotts and Bermudez ... and have or will receive moneys for releasing liabilities against them; is that right'? Alexander's mother responded, 'yes, sir.' "[14] The trial judge instructed the jury not to consider the settlement in their verdict.[15] The jury returned a verdict in favor of the plaintiff, but attributed 98% of the liability to one of the settled parties.

On appeal, we considered the trial judge's reference to the settlement as well as defense counsel's. We followed the federal courts' approach, concluding that a trial judge may disclose a third party settlement to the jury to avoid jury confusion.[16] We determined that, in order to "inform the jury of the alignment of the parties[,]" a trial judge may tell the jury

**4.** 931 A.2d 405, 407 (Del.2007) (internal citations omitted).

**5.** *Capital Management Co. v. Brown*, 813 A.2d 1094, 1100 (Del.2002).

**6.** *Id.* at 1100–01.

**7.** *Sammons v. Doctors for Emergency Services, P.A.*, 913 A.2d 519, 534 (Del.2006) (internal citations omitted).

**8.** *Id.*

**9.** *Capital Management*, 813 A.2d at 1100–01.

**10.** *Id.* at 1101.

**11.** 829 A.2d 117, 122–28 (Del.2003).

**12.** *Id.* at 119.

**13.** *Id.* at 120.

**14.** *Id.*

**15.** *Id.*

**16.** *See id.* at 123–24.

that one defendant has settled as long as the judge instructs them not to speculate why that party settled.[17] We concluded: "The trial judge did not abuse his discretion when he disclosed the fact of settlement to the jury, and would have been within his discretion if he had disclosed the fact of settlement to the jury at the outset of the trial."[18] Thus, it is within the trial judge's discretion to instruct the jury of the fact of a settlement, at the outset of trial or during his jury instructions, to avoid jury confusion. The *amount* of the settlement, however, must never be disclosed.

In *Alexander*, we held that the trial judge abused his discretion by allowing defense counsel to elicit testimony about the plaintiff's settlement with two of the defendants.[19] We determined that "D.R.E. 408 bars this testimony because counsel asked the question for the purpose of persuading the jury that the persons to blame for the accident had already admitted liability, raising the question that the plaintiff's claim against [the non-settled defendant] might be invalid or to limit a damage award" by implying that the plaintiff had already been fully compensated for his injuries.[20] The risk of misleading the jury—because of speculation regarding the compensation plaintiff received—outweighed the relevance of defense counsel's questioning.[21]

In *Sammons v. Doctors for Emergency Services, P.A.*, we again addressed the propriety of disclosing to the jury the fact that a third party defendant had settled.[22] *Sammons* involved a medical negligence claim against multiple defendants.[23] One defendant settled pretrial.[24] At trial, the trial judge allowed defense counsel to refer to the plaintiff's settlement during opening statements and closing arguments.[25] During opening statements, defense counsel stated: "But the failure of the nursing staff is subsumed within the claim that the plaintiff brought against Christiana Care, which has been settled."[26] Again, in closing arguments, defense counsel stated: "But Christiana Care has settled. They're not here. That's their responsibility." We concluded that these statements did not require reversal, because those statements "did not reveal any amount of settlement and counsel used the statements to help the jury understand the alignment of the parties and to determine pro rata fault, if applicable."[27] The trial judge specifically instructed the jury to determine whether the defendants remaining in the case were negligent and whether their negligence caused the plaintiff's injury. Thus, the trial judge did not abuse her discretion.

Finally and most recently, we addressed this issue in *Wright v. Moore*.[28] In *Wright*, the plaintiff filed a negligence action stemming from two separate car acci-

---

17. *Id.* at 124.

18. *Id.* at 125.

19. *Id.* at 127 ("Q: Mrs. Alexander, you and your husband have reached a settlement on behalf of your son against Defendant Knotts and Bermudez ... and have or will receive moneys for releasing liabilities against them; is that right? A: Yes, sir.").

20. *Id.* at 127.

21. *Id.*

22. *See generally* 913 A.2d 519.

23. *Id.* at 522–23.

24. *Id.* at 523 n. 2.

25. *Id.* at 533.

26. *Id.* at 535.

27. *Id.*

28. *Wright v. Moore*, 931 A.2d 405 (Del.2007).

dents against two separate defendants.[29] One defendant settled pretrial and the trial proceeded against the remaining defendant. The trial judge allowed defense counsel, over plaintiff's objections, to refer to the settlement during opening statements and closing arguments, and also while examining witnesses. The trial judge permitted defense counsel to question the plaintiff about the release given in connection with the settlement.[30] In closing, defense counsel argued:

> And, in fact, [plaintiff] has been compensated for all those injuries laid out in that complaint, all the exact injuries she's claiming against [the defendant at trial]. She's compensated for her neck, for her back, for her knee, for her ankle, for her arm. It's all in the complaint. It's all right there [in the release].

The jury returned a defense verdict, and we reversed. We concluded that defense counsel used his questioning about the release and his comments in closing not to avoid jury confusion, but instead to suggest that a settling party had fully compensated the plaintiff—"[b]oth the questions and the closing comments were highly improper."[31]

■ Here, the trial judge properly acted within his discretion by instructing the jury that one defendant "was no longer in the case" and that they should not speculate why. This instruction is permissible to define the alignment of the parties and to avoid confusing the jury. When necessary, the trial judge may instruct the jury that a party has settled but that they should not speculate why. Our decision in *Sammons,* however, permits trial judges to allow counsel to refer to the settlement in opening statements and closing argu-

ments *only* after counsel tells the judge what counsel intends to say, so that the trial judge can assess the purpose of the reference.

We conclude that Reliable's closing arguments exceeded the "proper purpose" boundaries. Although not as explicit or egregious as the comments made in *Wright* (where counsel argued that a settlement had fully compensated the plaintiff), the closing argument here clearly implied that Davis had admitted liability by settling. Reliable's claim that Davis "fell on the sword" implied that Davis admitted liability and suggested that Davis' taking the blame rendered the current claims against Reliable invalid. "Falling on the sword" conjures thoughts of admission and resignation to fault, as if Davis had admitted liability. That could invite the jury to infer that any claims remaining against Reliable were unfounded. This goes well beyond the limited, permitted mention of settlements to inform the jury of the alignment of the parties because it flatly contradicts the policy limiting references to settlement articulated by the principles outlined in *Capital Management.* Here, as in *Alexander,* Reliable's closing argument had the "purpose of persuading the jury that the persons to blame for the accident had already admitted liability, raising the question that the plaintiff's claim against [the nonsettling defendant] might be invalid or to limit a damage award."[32]

The trial judge's instruction that statements of counsel were not evidence did not cure Reliable's counsel's improper statement. Although "[j]uries are presumed to follow the trial judge's instructions," the jury's questions while deliberating demon-

---

29. *Id.* at 406.

30. *Id.* at 407.

31. *Id.* at 408.

32. *See Alexander,* 829 A.2d at 127.

strated that Reliable's injection of the settlement into the case confused them.[33] The jury asked: "If the jury answers zero dollars for question number four for both plaintiff ... does question seven rely on that question?" The trial court responded: "If that is your answer to question four, question seven is irrelevant and need not be answered."[34] The jury also asked the following questions:

(1) Why do the instructions on page 32 say we have to decide on Davis' liability if he has settled?

(2) Our questions one, two, and three only refer to Reliable, so should we only be considering Reliable's liability first?

Although generally "[d]isclosing settlement explains the absence of the settling defendants and thus tends to reduce jury confusion," these questions show that Reliable's mention of the settlement had actually created jury confusion.[35] The jury's questions demonstrate that they were taking the settlement into account when contemplating Reliable's liability and potential payout, despite having been told that they were not to speculate about why Davis "was no longer in the case."

We cannot allow litigants to imply that one party's decision to settle means that the settling party has admitted liability. Permitting counsel to suggest that settlement amounts to admitting fault discourages parties from settling—particularly in cases where the jury will be tasked with attributing a specific percentage of liability to multiple defendants. If the remaining parties are allowed to use the fact of settlement by a co-defendant to suggest that the settled party fully compensated the plaintiff, neither the party settling, who remains as a third party defendant, nor the non-settling trial party plaintiff, will have any incentive to settle in the first place.

We recognize that, in certain complex cases, there may be times when the parties may need to explain a party's absence from the trial. We also recognize the difficulty of resolving third party claims when the jury's main focus is on the defendant present in the courtroom. However, because here the settling party, Davis, testified, Reliable had ample opportunity to develop its' third party claim on the factual merits. Reliable did not need to refer to the fact that Davis had settled to argue

---

**33.** *Revel v. State*, 956 A.2d 23, 28 (Del.2008).

**34.** The Special Interrogatories to the Jury read as follows:

Question 1: Do you find be preponderance of the evidence that the defendant Reliable was negligent in a manner that approximately caused the plaintiffs' damages?

Question 2: Do you find by a preponderance of the evidence that the defendant Reliable made negligent misrepresentations in violation of the Delaware Consumer Fraud Statute in a manner that proximately caused plaintiff's damages?

Question 3: Do you find by a preponderance of the evidence that the defendant Reliable breached its contract in a manner that proximately caused the plaintiffs' damages?

Question 4: If your answer to any of these questions one through three is yes, please state the amount of damages

Question 5: Do you find by a preponderance of the evidence that Defendant Davis' actions were negligent in a manner that proximately caused the plaintiffs' damages?

Question 6: Do you find by a preponderance of the evidence that Defendant Davis' actions were fraudulent in a manner that proximately caused the Plaintiffs' damages?

Question 7: If you answer to 1 or 2 and 5 or 6 is "Yes", please state the percentage of liability that you attribute to each Defendant. The assigned percentages must total 100%.

**35.** *Alexander*, 829 A.2d at 123.

that the jury should infer Davis' liability from the facts of the case alone.

Although trial judges have broad discretion in deciding whether to allow the parties to refer to a settlement, this case demonstrates the need for counsel to disclose in advance how counsel intends to use that reference before the jury and for trial judges to provide counsel with clearly defined parameters of what they may tell the jury about an absent party. Here, the trial judge merely instructed Reliable's counsel not to mention the specific settlement amount, and optimistically told counsel to "be careful." Beyond that, the trial judge did not otherwise set any clear boundaries. The trial judge had no forewarning of Reliable's counsel's intended statements about the significance of settlement. Had the trial judge been so advised, he could then have accessed its impact, crafted an appropriate instruction and barred the parties from suggesting to the jury any inappropriate interpretation of the significance of Davis having settled.

## CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for a new trial.