# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| STEPHANIE AND ALEXANDER ABBOTT, Individually, and as Personal Representatives of the Estate of their minor daughter, M.P.A., <br><br> Plaintiffs, <br><br> v. <br><br> DEDICATED TO WOMEN OB/GYN, P.A., BAYHEALTH MEDICAL CENTER, INC., And CHRISTIANA HEALTH CARE SERVICES, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No.: N20C-05-175 FJJ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Submitted: December 18, 2023
Decided: January 2, 2024

## OPINION AND ORDER
### ON PLAINTIFF'S MOTION FOR A NEW TRIAL
#### *DENIED*
### ON DEFENDANT'S MOTION FOR COSTS
#### *GRANTED IN PART and DENIED IN PART*

*Bruce L. Hudson, Esquire, and  Josh Inkell, Esquire,* Hudson Castle & Inkell, LLC, Wilmington, De., *Attorneys for Plaintiffs*

*Gregg Luther, Esquire*, Keenan Law Firm, Atlanta, GA, *Attorney for Plaintiffs.*

*Gregory S. McKee, Esquire, and Jonathan Landau, Esquire*, Wharton, Levin, Ehrmantraut & Klein, P.A., Wilmington, De. *Attorneys for Dedicated to Women Ob/Gyn, P.A.*

*Colleen Shields, Esquire, Alexandra Rogin, Esquire, and Randall MacTough, Esquire,*, Eckert, Seamans, Cherin & Mellott, LLC, Wilmington, De., *Attorneys for Bayhealth Medical Center*

**Jones, J.**

This is a medical malpractice case brought by Stephanie and Alexander Abbott individually and as personal representatives of the Estate of Maisy Abbott (hereinafter referred to the "Abbotts" or "Plaintiffs"). The Plaintiffs sued Dedicated to Women OB/GYN, (hereinafter "DTW"), Bayhealth Medical Center, Inc. (hereinafter referred to as "Bayhealth") and Christiana Care Health Services, Inc. (hereinafter referred to as "CCHS"). After a 2½ week trial, the jury returned a verdict in favor of the Defendants. Plaintiffs have filed a Motion for a New Trial. DTW has filed a Motion for Costs. This is the Court's decision on both of these motions.

## FACTS

After jury selection but before opening statements, CCHS settled with the Plaintiffs. The Court ascertained that DTW and Bayhealth intended to proof up their cross claims against CCHS. Once DTW and Bayhealth indicated their intent to proceed with their crossclaims the Court determined that a preliminary instruction was required to advise the jury of CCHS's involvement in the trial. The parties debated whether the words "settlement" or "resolved" should have been in the instruction to the jury or not; the Plaintiffs argued for resolved and the Defendants for settlement. The following instruction was given to the jury before opening statements:

> Ladies and gentlemen, the Plaintiffs have resolved their dispute with Christiana Care. Christiana Care will not be participating in this trial. You may, however, be asked to assess Christiana Care's actions during your deliberations,

1

but I will instruct you further about that at the end of the case during my jury instructions.

Prior to any testimony, the Plaintiffs advised the Court that they were "no longer pursuing the remaining claims against the Bayhealth employees who were under Dr. Stefano for any negligence because, quite frankly, causally, the damage was done, and Dr. Stefano will tell the jury that."[1]  In reliance on this statement, Bayhealth eliminated a number of witnesses.  During its case, DTW called and read into evidence portions of Dr. Soltau's deposition to prove the cross claim against CCHS. Plaintiff also read portions of Dr. Soltau's deposition to the jury. At the conclusion of this read-in, Plaintiffs moved to reopen their case against Bayhealth.  The Court denied this request. The Court ruled that because Bayhealth had relied on the Plaintiffs' representation that these claims were not going to be presented in choosing not to call certain witnesses, including experts, it would be inappropriate to allow Plaintiffs to reopen their case.

At the conclusion of DTW's case the Plaintiffs moved for directed verdict on the grounds that DTW did not read into evidence the following question and answer of Dr. Soltau, "Question: Do you hold all the opinions that you have provided here today to a reasonable degree of medical probability? Answer: Yes, ma'am."  The Court denied the Plaintiffs' motion for directed verdict finding that when taking the testimony as a whole and considering Delaware case law, DTW had made a prima

---

[1] Trial Transcript, October 16, 2023, pg. 32, lines 16-20.

facia case even without the referenced question and answer. To avoid any confusion on the issue the Court exercised its discretion and allowed DTW to reopen its case to read the foresaid question and answer to the jury. The question and answer was then read to the jury.

The jury was given the following instruction during the course of final instructions.

**RESOLVED CO-DEFENDANT**

When this case began, the Abbotts alleged that the joint negligence of Bayhealth Medical Center, Inc. ("Bayhealth"), Dedicated to Women ("DTW") and Christiana Care Health Services ("CCHS") was the proximate cause of their injuries and the death of Maisy Abbott. Before this trial, CCHS resolved with Plaintiffs on all of Plaintiffs' claims against it. Your deliberations, however, must determine whether CCHS, DTW, or Bayhealth, were negligent and whether that negligence was the proximate cause of the injuries to the Abbotts.

DTW and Bayhealth have asserted crossclaims against CCHS, asserting that CCHS's negligence was the proximate cause of the injuries to the Abbotts. You must determine whether either or all of Bayhealth, DTW, and CCHS were negligent, and whether that negligence proximately caused the Abbotts' injuries. If you find that either one or all of the Defendants committed medical negligence and that the negligence was a proximate cause of the injuries to the Abbotts, you must then determine the amount of damages you should award to the Abbotts to compensate them fairly and reasonably for their injuries.

In computing these damages, don't be concerned with the fact that a resolution was made with CCHS. You must not speculate about why the Abbotts resolved their claims with CCHS. If you find from the evidence that each

3

Defendant committed medical negligence and that negligence proximately caused injury to the Abbotts, then you should award damages to compensate the Abbotts for their fair and reasonable damages in full. In addition, you should apportion your verdict to attribute a percentage of negligence to each Defendant in a percentage range from zero to 100. You will be provided with a verdict form to guide you in this process.

The jury was given a verdict sheet to complete. The first two questions related to the liability of DTW and Bayhealth and the third question related to the liability of CCHS. The jury answered in the negative as to the liability of DTW and Bayhealth. The jury never reached the questions regarding CCHS. A verdict for the Defendants was entered.

## PLAINTIFF'S MOTION FOR NEW TRIAL

Plaintiffs have moved for a new trial pursuant to Superior Court Civil Rule 59 on two grounds: (1) Plaintiffs contend that counsel for DTW during his closing argument violated the rule set forth in *Atwell v. RHIS, Inc.* by arguing to the jury that CCHS's settlement with Plaintiffs was an admission of liability,[2] and (2) Plaintiffs claim that the Court committed error in allowing DTW to reopen its case to ask a question of Dr. Soltau as to whether all of his opinions were within a reasonable degree of medical probability.

In *Atwell*, the Delaware Supreme Court found that the Defendant's closing argument justified a new trial because counsel's closing argument was not a

---

[2] 974 A.2d 148 (Del. 2009).

4

reference to a settlement, but "clearly implied that [the settling Defendant] had admitted liability by settling."[3]   In *Atwell,* the Supreme Court, citing *Sammons v. Doctors For Emergency Services, P.A.,*[4] reaffirmed the concept that it is proper for a jury to be told that one of the parties has settled to avoid confusion.[5]  The Court also affirmed the notion that "it would be justly inconceivable that a jury couldn't be informed of [settling Defendants], otherwise they are not going to have any understanding as to why they are not here.[6]  Moreover, there is no question that evidence of previous settlements with joint tortfeasors is necessary to determine the amount by which Plaintiffs claims against the remaining Defendants should be reduced.[7]  What *Atwell* prohibits is an argument whose purpose is to persuade the jury that the persons to blame for the accident had already admitted liability.[8]  In *Sammons* the Court wrote:

> Here, the trial judge properly acted within his discretion by instructing the jury that one defendant "was no longer in the case" and that they should not speculate why. This instruction is permissible to define the alignment of the parties and to avoid confusing the jury. When necessary, the trial judge may instruct the jury that a party has settled but that they should not speculate why. Our decision in *Sammons,* however, permits trial judges to allow counsel to refer to the settlement in opening statements and closing arguments *only* after counsel tells the judge what counsel intends to say, so that the trial judge can assess the purpose of the reference.

---

[3] *Atwell,* at 148.
[4] 913 A.2d 519 (Del. 2006).
[5] *Atwell,* at 153.
[6] *Sammons*, at 534.
[7] *Id*. at 535.
[8] *Atwell,* at 154.

In the instant case counsel did not violate the *Atwell* restriction. Counsel made it known to the Court both before openings and closings, when discussing the preliminary instructions and the final instructions, that it intended to pursue its cross claim and argue CCHS's negligence and that the jury had to apportion fault if it found two or more of the Defendants, including CCHS, at fault.[9] Counsel's remarks emphasized Plaintiffs' alternative causation theories and were made to assist the jury in understanding the alignment of the parties. No settlement figures were disclosed and there was no attempt to persuade the jury that CCHS had admitted fault by settling.[10] Counsel's closing remarks on this issue align with the remarks made by counsel in Sammons and not the remarks in *Atwell*. There is no error associated with DTW counsel's closing remarks.[11]

Plaintiffs further maintain that the Court erred in allowing DTW to reopen its case when Plaintiffs were not permitted to reopen their case. The decision on whether to allow a party to reopen its case is within the sound discretion of the trial court.[12] The Court allowed DTW to reopen its case to ask Dr. Soltau a question to confirm that all of his opinions were within a reasonably degree of medical probability. There was no surprise to the Plaintiffs as to this testimony as it was clearly in Dr. Soltau's deposition transcript. There was no prejudice to the

---

[9] Trial Transcript, October 16, 2023, pages 7-8.

[10] *Id*.

[11] Even assuming that there was some error in the remarks during closing any error is moot as the jury never reached a decision on causation or liability as to CCHS because it found that the remaining defendants were not liable.

[12] *Pepe v. State*, 51 Del. 417, 171 A.2d 216, 219 (1961); *Zeglin v. Hayden*, 1995 Del.Super. LEXIS.

Plaintiffs other than the inevitable "I got you." Additionally, any fair reading of the portions of the deposition of Dr. Soltau that were initially read to the jury can only lead to a conclusion that Dr. Soltau's had clear expert opinions on causation and the breach of the standard of care as to CCHS.[13]

The fact that the Court denied a similar request to the Plaintiffs to reopen their case does not establish the law of the case for this issue. Each of the requests to reopen the case involved unique situations that called for the Court to exercise its judgment on the two separate individual situations. As to the Plaintiffs' request, it came well after Plaintiffs had advised the Court that they would not be pursuing these claims and the effected Defendant had relied on these representations. Moreover, Plaintiffs cannot claim surprise because they knew from the preliminary jury instruction dialogue that DTW was going to prove its cross claims and was going to do it through Dr. Soltau.

There was no error in allowing DTW to reopen its case.

Plaintiffs Motion for New Trial is **DENIED**.

### DEFENDANT'S MOTION FOR COSTS

I now turn to Defendant DTW's Motion for Costs. Having considered the Motion, the Plaintiffs' response, and the entire record, I award a total of $36,319.57 broken down as follow:

---

[13] *Green v. Weiner*, 766 A.2 492 (Del. 2001) The Delaware Supreme Court has written that Del. Code 18 § 6853 does not require medical experts to couch their opinions in legal terms or to articulate the standard of case with a high degree of legal precision or with "magic words", In this Court's view, this is a magic word situation especially where it is clear from the testimony ready that Dr Soltau' s testimony met the requirements of Section 6853.

7

1. Costs associated with Steven Nelson M.D. $8,655.92. I reduced his trial rate from $8,000 to $5,000 as I found the rate to be excessive. For the same reasons I reduced his travel time from $4,000 to $2,000.

2. Costs associated with Michelle Owens, M.D. $9,348.70.

3. Costs associated with Joseph Adashek, M.D. $10,552.96. I reduced his rates from $12,000 to $9,000 as the second day was for travel which should be at ½ of the full rate. I also reduced the travel expenses from $5,404.56 to $1,552.96 as the flight charge of $4,851.60 was excessive. I awarded $1,000 for flight travel.

4. Meditator's fee of $600.00.

5. Cost of technology $7,161.99 reduced from $10,753.75 as all three parties utilized the costs. I have included the amount of Plaintiffs' portion. If the Plaintiffs have separately paid for this, then the amount Plaintiffs have paid should be deducted from this amount.

For the above reasons, Plaintiffs' Motion for a New Trial is **DENIED** and Defendant's Motion for Costs are **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge

cc:    File&ServeXpress

8