Judy **BODNER**, Defendant
Below, Appellant,

v.

**STATE of Delaware**, Plaintiff
Below, Appellee.

No. 250, 1999.

Supreme Court of Delaware.

Submitted: March 21, 2000.
Decided: May 30, 2000.

---

[*] *Brandywine School District v. Hoskins*, Del. Supr., 492 A.2d 1247 (1985).

Sandra W. Dean, Assistant Public Defender, Dover, Delaware, for appellant.

John Williams, Department of Justice, Dover, Delaware, for appellee.

Before WALSH, HOLLAND and HARTNETT, Justices.

HOLLAND, Justice:

This is an appeal by the defendant-appellant, Judy Bodner, from final judgments of the Superior Court. Bodner was charged with: Driving Under the Influence of Alcohol,[1] Escape in the Third Degree,[2] and Driving During Revocation.[3] Following a jury trial, Bodner was found guilty of all counts.

Bodner has raised two issues in this direct appeal. First, she contends that the Superior Court erroneously denied her request for a jury instruction explaining the element of "actual physical control" with regard to the charge of Driving Under the Influence. Second, she submits that the Superior Court erroneously denied her request for a jury instruction on the affirmative defense of "justification/choice-of-evils," as set forth in 11 *Del. C.* § 463.

We have concluded that both of Bodner's contentions are meritorious. Consequently, the judgments of the Superior Court must be reversed. This matter will be remanded for a new trial.

### Facts

On the evening of August 16, 1998, Bodner called the Delaware State Police to report that her car was stuck on a railroad track near Cheswold. She requested help in moving the car off the railroad track. Bodner was advised that a police officer would come to the scene to help. She was also asked to remain at the nearby home where she was using the telephone. Bodner replied that she would not remain as requested because the officers would charge her with Driving Under the Influence of Alcohol.

Corporal Donald Christie, Jr. of the Delaware State Police responded to the scene near Cheswold. He found the vehicle, which was owned by Bodner's boyfriend, lodged on the railroad tracks. He then drove his marked police car into a nearby mobile home park. Bodner walked up to the police vehicle and was taken into custody. She was obviously intoxicated.

Corporal Christie obtained the car keys from Bodner. He was able to move the car off the railroad tracks. Corporal Christie testified that when he moved the car from the railroad tracks "it wasn't a simple procedure." When he returned to his police vehicle, Bodner had escaped. He found her hiding in a nearby mobile home.

Bodner told Corporal Christie, and she testified at trial, that she was not driving the car when it became stuck on the railroad tracks. Bodner testified that she and her boyfriend had gone to a party near Cheswold. Her boyfriend left with other friends to go to a bar in Maryland. Bodner was extremely intoxicated and could not drive. According to Bodner, after asking several people for help in getting home, a man attending the party, previously unknown to Bodner, offered to drive her home in her boyfriend's vehicle.

Bodner testified that she was sick and slept during most of the ride until the unknown driver awakened her because the car had stalled on the railroad tracks. He then left the vehicle. Bodner testified that she then got behind the wheel and tried to move the car off the tracks, but she was

1. 21 *Del. C.* § 4177.

2. 11 *Del. C.* § 1251.

3. 21 *Del. C.* § 2756.

unable to do so. She left the car and walked to a nearby home to call the police for help. She testified that because she was drunk and the driver had disappeared, she feared being arrested for Driving Under the Influence of Alcohol.

Corporal Christie testified that other police units "canvassed the area" to look for anyone meeting the description of the driver. Bodner also testified that she and her boyfriend had tried to locate the person who had driven her, but were unable to do so. No one interviewed the mobile home park residents or checked the homes in an attempt to locate the driver.

Bodner denied driving the car onto the railroad track. She did, however, testify that after the unknown driver left the vehicle, she got out of the passenger seat, went around the car and got in the driver's seat. She started the car but was unable to dislodge it from the railroad track.

### Driving, Operating, Actual Physical Control

■ 21 *Del. C.* § 4177(a)(1) provides that "No person shall drive a vehicle: When the person is under the influence of alcohol." 21 *Del. C.* § 4177(c)(3) defines the term "drive" as including "... driving, operating, or having actual physical control of a vehicle." The three terms (drive, operate, and actual physical control) are not synonymous, but define different physical actions.[4]

This Court has described the distinction between "drive" and "operate," as follows:

> The words "operating" and "driving" are not synonymous; they have well-recognized statutory distinctions. Of the two terms, the latter is generally accorded a more limited meaning. The term "driv-

ing" is generally used to mean ... steering and controlling a vehicle while in motion; the term "operating ..." is generally given a broader meaning to include starting the engine or manipulating the mechanical or electrical devices of a standing vehicle.[5]

In *Purcell,* for the first time, this Court discussed the term "actual physical control" that had recently been added to then Section 4176. We noted that by adding this language, the General Assembly expanded the scope of the statute to include more than just driving.[6] We cited, with approval, the Superior Court's use of a jury instruction that defined "actual physical control" as meaning "exclusive physical power and present ability to operate, move, park or direct whatever use or nonuse was to be made of the motor vehicle at the moment."[7]

At trial, Bodner argued that she was not in "actual physical control" of the automobile because she had no present ability to move the vehicle from the railroad tracks. Bodner requested the Superior Court to give a jury instruction that defined "actual physical control" as it was described by this Court in *Purcell.*[8] The Superior Court denied Bodner's request to instruct the jury by using the *entire* definition of actual physical control that this Court had cited with approval in *Purcell.* Instead, the Superior Court offered to define actual physical control for the jury as the "exclusive physical power and present ability to operate a motor vehicle."

Bodner declined to have the jury instructed with the abbreviated definition of actual physical control proposed by the Superior Court. Bodner's objection was preserved on the record. Thereafter, the jury was instructed that to convict Bodner

---

**4.** *See generally Lewis v. State,* Del.Supr., 626 A.2d 1350, 1356 (1993) ("It is the well-settled law of this State that statutes should be construed in a manner which avoid an absurd or mischievous result.").

**5.** *McDuell v. State,* Del.Supr., 231 A.2d 265, 267 (1967).

**6.** *State v. Purcell,* Del.Supr., 336 A.2d 223, 225 (1975).

**7.** *Id.* at 226.

**8.** *Id.*

of driving under the influence, it must find beyond a reasonable doubt that:

> First, that the defendant drove, operated, or had actual physical control of the motor vehicle at or about the time and place charged in the information.
>
> And, secondly, the defendant was under the influence of alcohol while she drove, operated, and/or had actual physical control of the motor vehicle.

### Parties' Contentions

Bodner argues that the Superior Court should have instructed the jury that the definition of actual physical control includes the present ability to move the motor vehicle. Bodner further argues that if this type of instruction had been given then there would have been a basis in the evidence for the jury not to convict her of driving under the influence since her trial testimony was that while she got behind the wheel of the car, adjusted the driver's seat, and started the engine, she was unable to move the car from its location on the railroad tracks.

The State argues that the car was movable from the railroad tracks by Corporal Christie. The State contends that whether Bodner was able to extricate the vehicle from the railroad tracks is irrelevant to her criminal liability for driving under the influence, as defined in 21 *Del. C.* § 4177. Accordingly, the State submits that the Superior Court was not required to include a definition of actual physical control based upon Bodner's subjective inability to move the car from the railroad tracks.

### Physical Control and Vehicle Operability

 The General Assembly has enacted a statutory scheme that is designed to afford maximum protection from the use of a vehicle by a person who is under the influence of alcohol. The term "drive" is now defined as including "driving, operating or having actual physical control of a vehicle." [9] A person who is driving also operates and has actual physical control of the vehicle. A person can operate a vehicle without driving it but not without having actual physical control.[10] A person can have actual physical control, however, without either operating or driving the vehicle. As the Minnesota Supreme Court has stated:

> Insofar as "physical control" refers to something other than "driving" or "operating," ... physical control is meant to cover situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property.[11]

 The broadest conduct that has been criminalized by the General Assembly is having actual physical control of a vehicle that is capable of being driven or operated on Delaware's highways by a person who is under the influence of alcohol. Conversely, a person cannot be properly convicted of driving while under the influence of alcohol by having actual physical control of an inoperable motor vehicle. Temporary inoperability, however, does not necessarily preclude criminal liability.[12] Consequently, the nature and duration of a motor vehicle's inoperability is a factor that must be evaluated by the trier of fact with all of the other surrounding circumstances.[13]

 In Bodner's case, the Superior Court erred as a matter of law by not

---

9. 21 *Del. C.* § 4177(c)(3).

10. *McDuell v. State,* Del.Supr., 231 A.2d 265 (1967).

11. *State v. Starfield,* Minn.Supr., 481 N.W.2d 834, 837 (1992).

12. *See id.* at 838.

13. *Id.*

instructing the jury with the definition of actual physical control that this Court cited with approval in *Purcell*.[14] We have also concluded that the definition of actual physical control in *Purcell* should be supplemented with the following additional instruction to a jury:

> ... In considering whether or not the defendant was in physical control of the motor vehicle while under the influence of alcohol, you may consider defendant's location in or by the vehicle, the location of the ignition keys, whether the defendant had been a passenger in the vehicle before it came to rest, who owned the vehicle, the extent to which the vehicle was operable, and if inoperable, whether the vehicle might have been rendered operable without too much difficulty so as to be a danger to persons or property. You may consider these as well as any other facts or circumstances bearing on whether or not the defendant was then in physical control of a motor vehicle which was or reasonably could become a danger to persons or property while the defendant was under the influence of alcohol.[15]

The deficiencies in the Superior Court's instructions with regard to the term "actual physical control" constituted reversible error because the complete absence of any definitional guidance "undermined the ability of the jury 'to intelligently perform its duty in returning a verdict.'"[16]

### *Justification/Choice–of–Evils*

Bodner's second contention is that if, despite her argument to the contrary, the jury found that she was in actual physical control of the vehicle when she attempted to move it off the railroad tracks, she was justified in taking that action. Bodner submits any vehicle that is immobilized on a railroad track is in danger of being hit by a train. The Superior Court denied Bodner's request for a choice-of-evils instruction because it concluded that there was no danger to a vehicle on a railroad track unless a moving train was in sight.

Bodner argues that the Superior Court erroneously denied her request to give a jury instruction on "justification/choice-of-evils," pursuant to 11 *Del. C.* § 463. The justification or choice-of-evils defense is appropriate when the evidence reflects a situation where someone must decide to commit what is otherwise a crime in order "to avoid an imminent public or private injury" that was not the result of the defendant's own conduct.[17] An example of such a choice-of-evils circumstance is where an inmate must escape from prison to flee from a fire.[18] While a prison inmate may justifiably escape to avoid injury in a prison fire he or she did not cause, once the inmate reaches a point of safety he or she is under an obligation to surrender promptly to lawful authorities.

An accused is entitled to a jury instruction if evidence has been produced to support a particular defense.[19] Bodner argues the record reflects that she was confronted with a choice-of-evils situation recognized under 11 *Del. C.* § 463. Accordingly, Bodner submits that she had a legally cognizable qualified right to commit the criminal offense of driving under the influence, by attempting to remove the vehicle from the railroad track, "to avoid

**14.** *State v. Purcell,* Del.Supr., 336 A.2d 223 (1975).

**15.** *Accord State v. Starfield,* Minn.Supr., 481 N.W.2d 834 (1992).

**16.** *Floray v. State,* Del.Supr., 720 A.2d 1132, 1138 (quoting *Flamer v. State,* Del.Supr., 490 A.2d 104, 128 (1983)).

**17.** 11 *Del. C.* § 463. *See also Delaware Criminal Code With Commentary* 110–113, (1973).

**18.** *Id. See generally State v. Palmer,* Del. Gen. Sess., 72 A.2d 442 (1950) (holding that intolerable prison living conditions not justification for escape).

**19.** *Ward v. State,* Del.Supr., 366 A.2d 1194 (1976).

an imminent public or private injury that was not the result of her own conduct."[20]

A rational trier of fact could conclude that a disabled vehicle on a railroad track constitutes an imminent danger even when no moving train is in sight. The credibility of Bodner's testimony that she did not cause the vehicle to become lodged on the railroad tracks was for the jury to determine. The Superior Court erred as a matter of law by not instructing the jury on Bodner's choice-of-evils defense.

### Conclusion

Therefore, the judgments of the Superior Court are reversed. This matter is remanded for a new trial in accordance with this opinion.