## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr.A. No.: 1105006045 |
| | ) | |
| | ) | |
| ANTONIO CAMACHO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: January 8, 2015
Decided: February 3, 2015

Christopher Marques, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Brian F. Rick, Esquire
Office of the Public Defender
900 N. King Street
Wilmington, DE 19801
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS

On May 8, 2011, Defendant Antonio Camacho ("Camacho") was subjected to a traffic stop and subsequently arrested. Camacho was charged with Driving Under the Influence of Alcohol, in violation of 21 *Del. C.* § 4177 and Driving Vehicle While License Suspended/Revoked, in violation of 21 *Del. C.* § 2756. On September 30, 2014, Defendant noticed the present motion to suppress, challenging the legality of the arrest.

On December 2, 2014, the Court held a hearing on the motion, and heard testimony from three witnesses: Officer Joshua Stafford of the Middletown Police ("Officer Stafford"); Master Corporal Mark Miller of the Middletown Police ("Cpl. Miller"), and; Camacho. During the

hearing, Camacho motioned to strike the testimony of and to disqualify Cpl. Miller as a witness. At the conclusion of the hearing, the Court reserved decision and allowed the parties to brief the issue regarding Cpl. Miller's testimony. This is the Court's Decision on Camacho's motion to strike and motion to suppress.

## FACTS

At the hearing on the motion to suppress, the State presented Officer Stafford and Cpl. Miller as witnesses. First, the State called Officer Stafford. The Court allowed Cpl. Miller to remain in the courtroom during Officer Stafford's testimony because the State asserted that Cpl. Miller was the chief investigating officer.

Officer Stafford offered the following testimony: on May 8, 2011, at approximately 12:19 a.m., he was patrolling on E. Lake Street when he observed a silver Infiniti parked directly in front of a "No Stopping, Standing, or Parking" sign (the "No Parking Sign"). Camacho was sitting in the driver's seat. Officer Stafford circled the block, and when he drove back a few minutes later, he saw that the vehicle was still parked in front of the No Parking Sign. Officer Stafford pulled up behind the car, and exited his patrol vehicle in order to advise Camacho that he was parked illegally. Officer Stafford claimed that when he approached Camacho, he observed keys in the ignition and a beer can in the center console. Camacho stated that he decided to pull over and wait for his wife to pick him up because he had been drinking and driving. Shortly thereafter, Cpl. Miller arrived at the scene, and Officer Stafford advised Camacho to turn off the vehicle. On cross-examination, Officer Stafford could not describe the keys to the vehicle.

After Officer Stafford testified, Camacho objected to having actual, physical control of the car at the time of the stop, and offered the following testimony: on the night of May 8, 2011,

2

Camacho's sister drove him to a party. At one point during the party, Camacho went to his sister's car to get paperwork. Although Camacho was in the vehicle when Officer Stafford approached him, he was not operating the vehicle, nor was the vehicle running. Specifically, Camacho stated that his sister owned an Infiniti G35, which was a "keyless" vehicle that operated by the push of a button, and did not require a key in order to start. Camacho did not recall telling Officer Stafford that he was driving, or that he was drinking and driving.

The State then presented its second witness, Cpl. Miller, who testified to the following: on May 8, 2011, he was on duty, supervising officers. Cpl. Miller arrived at the scene, and Officer Stafford quickly briefed him on the facts of the stop. At the time, Camacho was in the driver's seat, and the vehicle was running. Officer Stafford asked Camacho to step outside of the vehicle. As Camacho was walking toward Miller, who was standing toward the back of the vehicle, Cpl. Miller smelled a strong odor of alcohol, and saw that Camacho had glassy eyes, a flushed face, and disheveled clothes. Cpl. Miller then conducted three National Highway Traffic and Safety Administration ("NHTSA") field sobriety tests.[1]

Cpl. Miller stated that during the HGN test, Camacho showed six of the six possible clues, which Cpl. Miller considered a failure. Next, Cpl. Miller administered the walk-and-turn test. Cpl. Miller stated that during this test, Camacho showed two out of a possible eight clues, which Cpl. Miller considered to be a failure. Following the walk-and-turn test, Cpl. Miller conducted the one-leg-stand test. Cpl. Miller noted that Camacho did not present any significant balancing issues, and determined that Camacho passed this test. After conducting the tests, Cpl. Miller concluded Camacho was impaired, and placed Camacho under arrest.

---

[1] Cpl. Miller administered all three tests in compliance with NHSTA standards, and is certified to conduct all three tests.

3

During the hearing, Camacho timely objected to Cpl. Miller's testimony, after realizing that Cpl. Miller's "AIR" police report designated Officer Stafford as the primary investigating officer. Camacho argued that it was improper for Cpl. Miller to be present while Officer Stafford testified. The State argued that while the paperwork indicated that Officer Stafford was the investigating officer, Cpl. Miller was the primary investigating officer because he conducted the field tests.

## DISCUSSION

The Court is called upon to decide whether it was a fatal error to allow Cpl. Miller to remain in the courtroom during Officer Stafford's testimony, and if it was not a fatal error, whether Camacho had physical control of the motor vehicle to support a finding of probable cause.

### I. Motion to Strike

Under the Delaware Rules of Evidence 615, the court, at the request of a party or acting *sua sponte*, "may order witnesses excluded so that they cannot hear the testimony of other witnesses." However, D.R.E. 615(2) provides "[t]his rule does not authorize exclusion of . . . an officer or employee of a party which is not a natural person designated as its representative *by its attorney*."[2] A chief investigating officer, who acts as an officer of the State, may not be sequestered in a criminal case because he fits squarely within the exception under D.R.E. 615(2).[3] The rule specifically allows counsel to designate who will be the representative. As such, it is not material that the reports purport to list another officer as the chief investigative

---

[2] D.R.E. Rule 615(2) (emphasis added).
[3] *Burke v. State*, 484 A.2d 490, 497-98 (Del. Super. 1984).

4

officer. The Court does not have discretion in applying this exemption, and therefore, the State's chief investigating officer cannot be excluded from the trial.[4]

In the matter at hand, the Deputy Attorney General representing the State has designated Cpl. Miller as the State's representative in accordance with D.R.E. 615(2). Therefore, Cpl. Miller's presence during Officer Stafford's testimony was not a fatal error because he is exempt from sequestration. Defendant's motion to strike the testimony of and disqualify Cpl. Miller as a witness is denied, and the Court will now consider whether Camacho had physical control of the motor vehicle to support a finding of probable cause.

## II.    Motion to Suppress

On a Motion to Suppress, the State bears the burden of proving the legality of the underlying stop and subsequent arrest by a preponderance of the evidence.[5] In the instant case, Camacho challenges the legality of the arrest.[6]

An arrest made subsequent to a traffic stop must be supported by probable case.[7] "Probable cause exists where the facts and circumstances within the police officer's knowledge, and of which the police officer had reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed."[8] In establishing probable cause, a police officer must be able to show that under the totality of the circumstances, there is a fair probability that criminal activity is occurring or has occurred.[9]

---

[4] *Davis v. State*, 945 A.2d 1167at *2 (TABLE) (Del. 2008) (citing *Hamann v. State*, 565 A.2d 924, 929-30 (Del. 1989)).
[5] *State v. Anderson*, 2010 WL 4056130 at *3 (Del. Super. Oct. 14, 2010).
[6] It is undisputed that Camacho was stopped initially for committing a traffic violation, and that Officer Stafford had reasonable articuable suspicion to stop Camacho for parking illegally.
[7] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011); *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993).
[8] *Bease v. State*, 884 A.2d 495, 498 (Del. 2005).
[9] *Miller v. State*, 4 A.3d 371 , 373 (Del. 2010).

In arrests made pursuant to 21 *Del. C.* § 4177, the arresting officer must be able to demonstrate that he relied on facts that would support a finding of probable cause to believe that the defendant drove a motor vehicle while under the influence of alcohol.[10] Probable cause to arrest for driving under the influence ("DUI") "rests upon the observations of the arresting officer, which includes the driver's performance on field sobriety tests."[11]

An officer may have probable cause to arrest for DUI prior to administering field sobriety tests when there is "a quantum of trustworthy factual information" that would "warrant a man of reasonable caution" to conclude that he had probable cause to believe that the driver was driving under the influence of alcohol at the time of the stop.[12] Although certain factors by themselves might not establish probable cause, in considering the totality of the circumstances, multiple factors may, in the aggregate, establish probable cause.[13] In addition, once probable cause is established, even subsequent adequate performance on field sobriety tests do not undermine the probable cause.[14]

In his Motion, Camacho argues that the Court should not give weight to two factors when determining whether probable cause existed: (1) Camacho having control of the motor vehicle and; (2) Cpl. Miller's determination with respect to the walk and turn test.

### A. Physical Control of the Motor Vehicle

First, Camacho argues that the Court cannot consider that Camacho was in control of the motor vehicle as a factor in its probable cause analysis because Camacho did not have actual physical control of the motor vehicle. Under 21 *Del. C.* § 4177(c)(4), driving a motor vehicle includes "driving, operating, or having actual physical control of a vehicle." The Delaware

---

[10] *State v. Mulholland,* 2013 WL 3131642, at *4 (Del. Com. Pl. June 14, 2013).
[11] *Id.* at *4.
[12] *Bease,* 884 A.2d at 500 (quoting *State v. Maxwell,* 624 A.2d 926, 931 (Del.1993) (citations omitted)).
[13] *State v. Breza,* 2011 WL 6946980 at *5 (Del. Com. Pl. Dec. 20, 2011).
[14] *Id.* (citing *Lefebvre,* 19 A.3d at 293).

Supreme Court has noted that "[i]nsofar as 'physical control' refers to something other than 'driving' or 'operating,' . . . physical control is meant to cover situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property."[15] Moreover, "[a] person can have actual physical control of a motor vehicle without either driving or operating the vehicle."[16] In determining whether Camacho had physical control of the motor vehicle, the Court may consider a number of factors, including the location of the defendant, the location of the ignition keys, the owner of the vehicle, and the extent to which the vehicle was operable.[17]

Here, the State has met its burden in establishing, by a preponderance of the evidence, that Camacho had physical control of the vehicle. The State has presented uncontested evidence that Camacho was in the driver's seat of an illegally parked vehicle, with a beer in the center console. The State produced additional contested but credible testimony that the vehicle was running, that Camacho admitted to drinking and driving, and that he was in possession of the ignition key or key fob.

Officer Stafford and Cpl. Miller both testified that the motor vehicle was running when Cpl. Miller arrived at the scene, although neither witness was able to clearly describe the ignition keys or the location of the ignition keys. Both Officers saw a beer can in the center console. During direct examination, Officer Stafford was certain that the keys were in fact in the ignition of the vehicle. On cross examination, however, Officer Stafford was unable to describe the keys

---

[15] *Bodner v. State*, 752 A.2d 1169, 1173 (Del. 2000) (citing *State v. Starfield*, 481 N.W.2d 834, 837 (Minn.1992)).

[16] *State v. Mealy*, 2010 WL 175623 at *3 (Del. Com. Pl. Jan. 20, 2010) (citing *Bodnar*, 752 A.2d at 1173).

[17] *Bodner*, 752 A.2d at 1173.

7

or the keychain. Cpl. Miller was certain that the car was running, and recalled seeing the "key,"[18] however he was unable to recall where the key was during his investigation.

Evidence of the location of the ignition keys is only one factor that the Court may consider when determining whether Camacho had physical control of the vehicle. The absence of this factor does not discredit the essentially uncontested evidence that Camacho admitted to drinking and driving, and was sitting in the driver's seat of an illegally parked vehicle, which was running, with a beer in the center console. Therefore, the Court finds that the State has met its burden in establishing, by a preponderance of the evidence, that Camacho was in physical control of the motor vehicle as provided by 21 *Del. C.* § 4177(c)(4), and the Court will consider this factor in its probable cause analysis.

### B. The Walk and Turn Test

Next, Camacho challenged Cpl. Miller's determination with respect to the walk and turn test. Cpl. Miller considered Camacho's performance on the walk-and-turn test a failure after finding that Camacho showed two clues including: he stopped at the turn and was unsure of how to proceed and, he did not turn as directed. By Cpl. Miller's own test, he counted two clues on the turn. The Court finds however, that under NHTSA standards, Camacho's poor performance during the turn constitutes only one clue.[19] Therefore, the Court will not consider Cpl. Miller's determination with respect to the walk and turn test in its probable cause analysis.

---

[18] The Court will note that the 2007 Infiniti G35 was available with a traditional key and ignition, and also with a "keyless" fob and no ignition. Camacho has testified that this particular car was keyless.
[19] During the hearing, the Court took judicial notice of the NTSA standards, which provide that under the Walk and Turn test, an officer looks for the following clues: if the suspect cannot keep balance while listening to the instructions; begins before the instructions are finished; stops while walking to regain balance; does not touch heel-to-toe; steps off the line; uses arms to balance; makes an improper turn, or; takes an incorrect number of steps.

8

### C. The Court's Probable Cause Analysis

The Court will consider the following factors, in the totality of the circumstances, to determine whether Cpl. Miller had probable cause to arrest Camacho for DUI: (1) a traffic violation; (2) Camacho seated in the driver's seat with the car running; (3) an admission to drinking and driving; (4) the plain view of alcohol in the center console; (5) glassy eyes; (6) strong odor of alcohol; (7) disheveled clothes; (8) flushed face; (9) no balancing issues; and (10) performances on the HGN, walk and turn, and one-leg stand tests.

These factors, when considered in the totality of the circumstance, amount to probable cause. In the aggregate, Cpl. Miller's observations prior to administrating the field sobriety tests are sufficient to establish probable cause to arrest for a DUI. Since Cpl. Miller had probable cause before administering the field tests, Camacho's "favorable or mixed results on the field tests do not negate probable cause."[20]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike the Testimony of and to Disqualify Cpl. Miller as a witness is **DENIED**, and Defendant's Motion to Suppress is **DENIED**. The matter will now be set for trial. This Judicial Officer retains jurisdiction.

**IT IS SO ORDERED THIS 3rd Day of February 2015.**

The Honorable Carl C. Danberg,
Judge

---

[20] *Breza*, 2011 WL 6946980 at *5 (citing *Lefebvre*, 19 A.3d at 293).